## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EMERGENCY PHYSICIANS OF ST. CLARE'S, LLC, MERCER BUCKS ORTHOPEDICS, PC, and PASCACK EMERGENCY SERVICES,<br><br>On behalf of themselves and all others similarly situated,<br><br>　　　　　　Plaintiffs,<br>v.<br><br>PROASSURANCE CORPORATION, PROASSURANCE CASUALTY COMPANY, and PROASSURANCE INDEMNITY COMPANY, INC.,<br><br>　　　　　Defendants. | Civil Action No.<br>09-cv-6244-WJM-MF<br><br>**Motion Date: March 15, 2010**<br>**Oral Argument Requested**<br><br><br>**[Filed Electronically]** |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE DISMISS THE COMPLAINT

**STERN & KILCULLEN, LLC**
Jeffrey Speiser, Esq.
Andrew S. Bosin, Esq.
Michael Dinger, Esq.
75 Livingston Avenue
Roseland, New Jersey 07068
(973) 535-1900

**STARNES & ATCHISON LLP**
Walter William Bates, Esq. (*pro hac vice*)
Jay M. Ezelle, Esq. (*pro hac vice*)
100 Brookwood Place
P.O. Box 598512
Birmingham, Alabama 35209
(205) 868-6000

Attorneys for defendants ProAssurance Corporation, ProAssurance Casualty Company, and ProAssurance Indemnity Company, Inc.

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES…………...…………………………...……..….ii

BACKGROUND AND SUMMARY OF PLAINTIFFS' CLAIMS…………..…...1

ARGUMENT…………………………………………...…………...........6

I.    The Federal Arbitration Act Requires That Plaintiffs Arbitrate the Claims Asserted in This Case.……………………...………….................6

    A.    It Cannot Be Disputed That a Valid Agreement To Arbitrate Exists Between Plaintiffs and ProAssurance Casualty………..............7

    B.    It Cannot Be Disputed That Plaintiffs' Claims Are Within the Scope of the Arbitration Agreements…………………………………9

    C.    Plaintiffs Must Also Be Compelled to Arbitrate Their Claims Against ProAssurance Corporation and ProAssurance Indemnity Even Though They Are Not Signatories to the Policies……...……..10

    D.    Plaintiffs' Class Allegations Do Not Alter the Binding Nature of Their Agreement to Arbitrate Their Claims………………….....11

II.    If This Court Does Not Compel Arbitration, Plaintiffs' Claims Should Nevertheless Be Dismissed………………………………………...13

    A.    Mercer-Bucks' Claims Are Time-Barred…………………………...13

    B.    Emergency Physicians Was Charged the Correct Premium……...…14

    C.    It Is Apparent From the Face of the Complaint that Pascack Was Charged the Correct Premium…………………………………14

    D.    Plaintiffs Lack Standing to Assert Claims Against ProAssurance Corporation and ProAssurance Indemnity…………………………..15

    E.    Plaintiffs Fail To Allege Sufficient Factual Allegations Against ProAssurance Corporation and ProAssurance Indemnity to Sustain Any Claims Against These Entities………………………...17

CONCLUSION……………………………………….…………………..19

# TABLE OF AUTHORITIES

**CASE**                                                                    **PAGE**

*Advanced Acupuncture Clinic, Inc. v. AllState Ins. Co.*,
   2008 WL 4056244 (D.N.J. Aug. 26, 2008)………………………......…12

*Ashcroft v. Iqbal*,
   --- U.S. ---, ---, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)…………...1, 17, 18

*AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643 (1986)…………. 7

*Battaglia v. McKendry*, 233 F.3d 720 (3d Cir. 2000)………………………………9

*Bruno v. Mark MaGrann Assoc.*,
   909 A. 2d 768 (N.J. Supp. Ct. App. Div. 2006)......………………………..10

*Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.*,
   489 F.3d 590 (3d Cir. 2007) …………………………………………….....12

*County of Morris v. Fauver*, 707 A.2d 958 (N.J. 1998)…..………………………13

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985)………………………....6

*Gay v. CreditInform*, 511 F.3d 369 (3d Cir. 2007)…………………………..…..6

*Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003)……………………. …….11

*Green Tree Fin. Corp v. Randolph*, 531 U.S. 79 (2000)…………………………...7

*Howard v. Klynveld Peat Marwick Goerdeler*,
   977 F.Supp. 654 (S.D.N.Y. 1997)………………….…………..………….12

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002)……………….........12

*In the matter of Ferrara*, 441 F. Supp. 778 (S.D.N.Y. 1977)………………………8

*Kennilworth Partners L.P. v. Cendant Corp.*, 59 F.Supp.2d 417 (D.N.J.1999)…..17

*Kisner v. Bud's Mobile Homes*, 512 F. Supp.2d 549 (S.D.Miss. 2007)………..…..8

*JLM Indus., Inc. v. Stolt-Nielsen, S.A.*, 387 F.3d 163 (2d Cir. 2004)……………..10

*Johnson v. Geico Casualty Co.*, 2009 WL 4799214 (D.Del. Dec. 11, 2009)……..16

*Medtronic AVE Inc. v. Cordis Corp.*, 100 Fed. Appx. 865 (3d Cir. 2004)…………9

*Perry v. Thomas*, 482 U.S. 483 (1987)………………………..…………………6

*Pietrangelo v. NUI Corp.*, 2005 WL 1703200 (D.N.J. 2005)……………………17

*Smith v. Cavalier Builders, Inc.*, 2008 WL 819960 (D.N.J. 2008)…………...17, 18

*Staples v. The Money Tree, Inc.*, 963 F.Supp. 856 (M.D. Ala. 1996)……………..6

*St. Louis Chiropractic v. Fed. Ins. Co.*,
  2008 WL 4056225 (D.N.J. Aug. 26, 2008)………………………………...12

*Storino v. Borough of Pt. Pleasant Beach*, 322 F.3d 293 (3d. Cir. 2003)………...15

*Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Inc.*,
  1 F.3d 639 (7th Cir. 1993)…..……………….………………...…………9

*Taliaferro v. Darby Township Zoning Bd.*, 458 F.3d 181 (3d Cir. 2006)………...16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499 (2007)…………..…..4

*Trippe Manufacturing Co. v. Niles Audio Corp.*, 402 F.3d 529 (3d Cir. 2005)……7

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*,
  140 F.3d 478 (3d Cir. 1998)...……………………..………………..…..1

*United Steelworkers of Am. v. Rohm & Haas, Co.*, 522 F.3d 324 (3d Cir. 2008)….7

*Volt Info. Sciences v. Bd. Of Trustees*, 489 U.S. 468 (1989)………………………6

*Warth v. Seldin*, 422 U.S. 490 (1975)………….........................................……1

*Weiner v. Bank of King of Prussia*, 358 F.Supp. 684 (E.D.Pa. 1973)…………….16

*Yale Materials Handling Corp. v. White Storage & Retrieval Systems, Inc.*,
573 A.2d 484 (N.J. Supp. Ct. App. Div. 1990)..……………………….....9

## **STATUTES and RULES**

9 U.S.C. § 2………………………………………………………………...8

9 U.S.C. §§ 3, 4………………………………………………………………7

9 U.S.C. §§ 1-16………………………………………………………....6

N.J.S.A. 2A:14-1…………………………..…………………………..13

Fed. R. Civ. P. 8……………………….…………………………..17

Fed. R. Civ. P. 12……………………….…………………………...1, 4

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants ProAssurance Corporation, ProAssurance Casualty Company, and ProAssurance Indemnity Company, Inc. move this Court to either compel arbitration or, in the alternative, dismiss this case.

## BACKGROUND AND SUMMARY OF PLAINTIFFS' CLAIMS[1]

The individual defendants, ProAssurance Corporation ("ProAssurance"), ProAssurance Indemnity Company, Inc. ("ProAssurance Indemnity") and ProAssurance Casualty Company ("ProAssurance Casualty"), are related entities involved in the sale of medical malpractice insurance. Compl. ¶ 15. Among the policies sold by defendants are "claims-made" policies, which cover the policyholder for alleged incidents of malpractice that occur on or after the applicable "retroactive date" for coverage and are first reported during the policy period. Compl. ¶ 2. If a claims-made policy is not renewed for an additional term at its expiration, a policyholder has the right to purchase an Extended Reporting Period ("ERP") endorsement, which provides coverage for alleged incidents of

---

[1]    The facts set forth are culled from the Complaint and incorporated documents which for purposes of a motion to dismiss must be taken as true and viewed in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). This assumption of truth is inapplicable, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

malpractice that occurred during the coverage period but are first reported *after* the policy period ends.  Compl. ¶ 2.

Plaintiffs Mercer-Bucks Orthopedics, PC ("Mercer-Bucks"), Pascack Emergency Services, PA ("Pascack"), and Emergency Physicians of Saint Clare's ("Emergency Physicians") are group medical practices each of which purchased a claims-made policy and subsequently purchased ERP endorsement from ProAssurance Casualty.  Compl. ¶¶ 26-27, 29, 34-35, 38, 42-43, 45.

Plaintiffs hope to bring this action against defendants on behalf of two putative classes.  Compl. ¶ 20.  The first putative class consists of:

> all former ***New Jersey policyholders*** of defendants terminating during 2003, 2004 or 2005 who purchased ERP endorsements from defendants and were charged the rate defendants had filed for ERP endorsements covering claims arising after the termination of plaintiffs' policies, rather than the filed rate for ERP endorsements pertaining to plaintiffs' policies.

Compl. ¶ 20 (emphasis added).  The second, and larger, putative class consists of:

> all former ***policyholders*** of defendants terminating during 2003, 2004 or 2005 who purchased ERP endorsements from defendants and were charged the rate defendants had filed for ERP endorsements covering claims arising after the termination of plaintiffs' policies, rather than the filed rate for ERP endorsements pertaining to plaintiffs' policies.

*Id.* at ¶ 20 (emphasis added).

Plaintiffs allege that, if malpractice insurance companies wish to change their rates, they must file those new rates with the New Jersey Department of Banking and Insurance ("DOBI") and are then bound by those rates. Compl. ¶¶ 22-25.

Mercer-Bucks is a group medical practice incorporated and located in New Jersey that purchased a claims-made malpractice insurance policy from ProAssurance Casualty. Compl. ¶¶ 13, 26-27. In a letter dated October 30, 2003, ProAssurance Casualty notified Mercer-Bucks that it would not be renewing Mercer-Bucks' policy effective December 31, 2003, but that Mercer-Bucks could purchase an ERP endorsement from ProAssurance Casualty for the premium amount set forth in that letter. Compl. ¶¶ 28-30. Mercer-Bucks alleges that ProAssurance Casualty overcharged Mercer-Bucks for the ERP endorsement by charging the rate effective January 1, 2004 instead of the rate that was effective on December 31, 2003, the date the ERP endorsement became effective. Compl. ¶¶ 32-33.

Emergency Physicians is a group medical practice incorporated and located in New Jersey that purchased a claims-made malpractice insurance policy from ProAssurance Casualty. Compl. ¶¶ 12, 42-43. Emergency Physicians alleges that on or about January 24, 2005, ProAssurance Casualty sent it a letter confirming that Emergency Physicians had cancelled its policy with ProAssurance Casualty,

that this cancellation was effective December 31, 2004, and that for $846,000 Emergency Physicians could purchase an ERP endorsement.  Compl. ¶ 44. Emergency Physicians alleges that ProAssurance Casualty overcharged Emergency Physicians for the ERP endorsement by charging the rate effective January 1, 2005 instead of the rate effective December 31, 2004.  Compl. ¶¶ 46-47.  However, the rate effective December 31, 2004 was the same rate effective January 1, 2005 because Emergency Physicians rate changes for 2005 were not effective until April 1, 2005.  Declaration of Michael Dinger ("Dinger Decl."), Exh. D.[2]

Pascack is a group medical practice incorporated and located in New Jersey that purchased a claims-made malpractice insurance policy from ProAssurance Casualty.  Compl. ¶¶ 14, 34-35.  Pascack alleges that ProAssurance Casualty notified Pascack that it would not be renewing Pascack's policy effective June 30, 2004, but that, for $283,084, Pascack could purchase an ERP endorsement. Compl. ¶¶ 36-37.  Unlike Mercer-Bucks and Emergency Physicians, who both allege that the cost of their ERP endorsements should have been based on the rate

---

[2]    Because ProAssurance Casualty's rate filings with DOBI are referenced, quoted and relied upon in the Complaint (*see*, *e.g.*, ¶¶ 25, 46, 49, 55), as are the Plaintiffs' insurance policies, the Court may properly consider them in their entirety in deciding this Motion.  *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2509 (2007) (citing 5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007) (on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.")).

in effect on the effective date of their ERP endorsements—which in both cases was December 31—Pascack alleges that the rate in effect on the effective date of its ERP endorsement, which was June 30, 2004, should *not* apply and instead it should have been charged some other, undisclosed lower rate.  Compl. ¶¶ 38, 40-41.

Plaintiffs' first cause of action alleges that defendants violated the New Jersey Consumer Fraud Act ("NJCFA") by overcharging Plaintiffs for ERP endorsements (¶48) and failing to inform Plaintiffs that they were overcharging them (¶49).  Plaintiffs' second cause of action alleges breach of contract based on the same alleged conduct.  ¶¶54-55.  Plaintiffs' third cause of action seeks disgorgement of all overcharges and "an accounting of all payments charged and received by defendants for ERP endorsements pertaining to policies issued in 2003, 2004 and 2005" based on the same alleged conduct.  ¶¶61-66.

Plaintiffs' causes of action fail to state any valid claims and should therefore be dismissed.

5

## <u>ARGUMENT</u>

**I.   THE FEDERAL ARBITRATION ACT REQUIRES THAT PLAINTIFFS ARBITRATE THE CLAIMS ASSERTED IN THIS CASE.**

All three of the Plaintiffs in this case contractually agreed that "[a]ny dispute, claim or controversy arising out of, relating to or in connection with this policy . . . shall be submitted to binding arbitration."  Dinger Decl. Exhs. A, B and C at ¶ XIII (hereinafter, the "Policies").  Therefore, the Federal Arbitration Act[3] prohibits Plaintiffs' attempt to litigate their claims in this Court and requires this case be sent to arbitration.  "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)(emphasis in original); *see also Gay v. CreditInform*, 511 F.3d 369, 387 (3d Cir. 2007)(finding that "in determining whether a matter should be arbitrated,

---

[3]   9 U.S.C. §§ 1-16; *Perry v. Thomas*, 482 U.S. 483, 489 (1987).  The Plaintiffs have agreed that each of their policies with ProAssurance Casualty "evidences a transaction involving interstate commerce."  Dinger Decl. Exhs. A, B and C at ¶ XIII.  Moreover, the plaintiffs' have agreed that "the Federal Arbitration Act . . . shall apply to the rights and obligations of the parties' to submit any dispute, claim or controversy arising under [their policies] to arbitration."  *Id.* at ¶ XIV.  *See Staples v. The Money Tree, Inc.*, 936 F.Supp. 856, 585 (M.D. Ala. 1996)(relying on *Volt Info. Sciences v. Bd. of Trustees*, 489 U.S. 468, 479 (1989) to find that FAA applied to the parties' arbitration agreement in instance where the parties' stipulated that the contract between them involved interstate commerce).

there is a strong presumption in favor of arbitration, and doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

When considering a motion seeking to compel arbitration, the Court need only resolve two issues: "(1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Manufacturing Co. v. Niles Audio Corp.*, 402 F.3d 529, 532 (3d Cir. 2005); *see also* 9 U.S.C. §§ 3, 4. When determining both the existence and the scope of an arbitration agreement, there is a presumption in favor of arbitrability. *E.g.*, *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 648 (1986); *United Steelworkers of Am. v. Rohm & Haas, Co.,* 522 F.3d 324, 331 (3d Cir. 2008). Moreover, the burden is on the party opposing arbitration to prove its claims should not be sent to arbitration. *Green Tree Fin. Corp v. Randolph*, 531 U.S. 79, 91 (2000). Plaintiffs cannot satisfy their burden because the face of the Complaint, and the policies incorporated by reference, demonstrate that an agreement to arbitrate is an integral part of Plaintiffs' policies and the scope of the arbitration agreement in each of the Policies encompasses Plaintiffs' dispute over the rates.

## A.    It Cannot Be Disputed That a Valid Agreement To Arbitrate Exists Between Plaintiffs and ProAssurance Casualty.

The FAA makes arbitration agreements "valid, irrevocable, and enforceable" absent some grounds existing at law or in equity that require the revocation of the

7

contract containing the arbitration agreement.  9 U.S.C. § 2.  The Complaint contains no allegations that would require revocation of the Policies.[4]

It is also undisputed that each of the Plaintiffs' Policies contains the following arbitration provision:

> Any dispute, claim or controversy arising out of, relating to or in connection with this policy, its subject matter or its negotiation, as to the existence, validity, interpretation, performance, non-performance, enforcement, operation, breach of contract, breach of warrant, continuance or termination thereof or any claim alleging fraud, deceit, or suppression of any material fact or breach of fiduciary duty shall be submitted to binding arbitration in accordance with Title 9 U.S.C. § 1 et seq. (The United States Arbitration Act) and the Commercial Arbitration Rules of the American Arbitration Association. . . .  The provisions hereof shall be a complete defense to any suit, action, or proceeding in any federal, state or local court or before any administrative tribunal with respect to any dispute, claim or controversy arising under this **policy.**

---

[4]     Plaintiffs are sophisticated parties and have failed to plead any allegations that would support revocation of the arbitration agreement.  *See, e.g., Kisner v. Bud's Mobile Homes*, 512 F.Supp.2d 549 (S.D.Miss. 2007) (finding that "[w]hile an agreement to arbitrate is not inherently unfair or unconscionable, a plaintiff may prove procedural unconsionability if she proves a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms"); *In the matter of Ferrara*, 441 F. Supp. 778 (S.D.N.Y. 1977) (finding arbitration agreement enforceable where the arbitration provision was noticeable in the contract, there were no allegations of fraud or duress in signing or inducing the contract, and there was no showing of unequal bargaining power or sophistication between the contracting parties).

Dinger Decl., Exhs. A, B and C at ¶ XIII (emphasis in original).  Therefore, as there is a valid, binding contract containing a broad arbitration provision, this case should be sent to arbitration.

### B.    It Cannot Be Disputed That Plaintiffs' Claims Are Within the Scope of the Arbitration Agreements.

Plaintiffs also fail to meet their burden that the claims asserted in this case are outside the scope of the arbitration agreements.  Plaintiffs have asserted claims for breach of contract, accounting/unjust enrichment, and violation of the New Jersey Consumer Fraud Act, all of which clearly arise out of, relate to, or have a connection with the Policies.  *See*, *e.g.*,  Compl. ¶¶ 1, 4, 32, 40, 46, 53,  54, 56.[5]  It is evident from the face of the Complaint that Plaintiffs' claims are not just tangentially connected to the Policies but are integrally dependent upon the Policies.  Therefore, Plaintiffs' claims are easily within the expansive scope of the arbitration agreements.

---

[5]    For instance, the provision applies to any claims "arising out of . . . the policy," which has routinely been afforded an expansive interpretation to include any dispute that is in any way connected to the contract.  *E.g., Medtronic AVE Inc. v. Cordis Corp*., 100 Fed. Appx. 865 (3d Cir. 2004); *Battaglia v. McKendry*, 233 F.3d 720 (3d Cir. 2000); *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Inc.*, 1 F.3d 639, 642 (7th Cir. 1993); *see also Yale Materials Handling Corp. v. White Storage & Retrieval Systems, Inc.,* 573 A.2d 484 (N.J. Supp. Ct. App. Div. 1990) (finding that arbitration provision covering claims "relating to" contract is even broader than provisions only covering claims arising out of contract).

**C.    Plaintiffs Must Also Be Compelled to Arbitrate Their Claims Against ProAssurance Corporation and ProAssurance Indemnity Even Though They Are Not Signatories to the Policies.**

Plaintiffs are also required to arbitrate their claims against ProAssurance Corporation and ProAssurance Indemnity even though they are not signatories to the Policies.  Claims against non-signatories are subject to arbitration if the issues to be litigated are intertwined with the agreement containing the arbitration clause.  *See Bruno v. Mark MaGrann Assoc.*, 909 A. 2d 768 (N.J. Supp. Ct. App. Div. 2006)(compelling arbitration on behalf of non-signatories when claims against them were factually the same as those against signatory and claims arise out of contract containing broad arbitration provision); *see also JLM Indus., Inc. v. Stolt-Nielsen, S.A.*, 387 F.3d 163 (2d Cir. 2004)(recognizing a non-signatory's right to compel arbitration based on the principle of equitable estoppel).  Because all of Plaintiffs' claims arise from the Policies, the claims against ProAssurance Corporation and ProAssurance Indemnity are certainly intertwined with the Policies.

Plaintiffs repeatedly refer to the Defendants collectively and without distinction.  *See, e.g.*, Compl. ¶ 33 ("***Defendants*** overcharged plaintiff MBO for its ERP endorsement.")(emphasis added); ¶ 41 ("***Defendants*** overcharged plaintiff PES for its ERP endorsement.")(emphasis added); ¶ 47 ("***Defendants*** overcharged plaintiff EPSC for its ERP endorsement.")(emphasis added); ¶ 56 ("***Defendants***

breached their contracts with plaintiffs. . . .")(emphasis added).  As discussed below, Plaintiffs have not asserted viable claims against ProAssurance Corporation and ProAssurance Indemnity because neither of those entities were parties to the Policies.  The Policies, however, provide the only possible nexus between Plaintiffs on the one hand and ProAssurance Corporation and ProAssurance Indemnity on the other.  Thus, to the extent Plaintiffs possess any possible claims against ProAssurance Corporation and ProAssurance Indemnity, those claims unquestionably arise from the Policies.  Further, the terms of the arbitration agreement in each of the Policies are broad enough to encompass any claims Plaintiffs may have against ProAssurance Corporation and ProAssurance Indemnity.  Accordingly, as Plaintiffs' claims against ProAssurance Corporation and ProAssurance Indemnity are inextricably intertwined with the Policies, and indeed the Policies constitute the only nexus between Plaintiffs and those two entities, those claims  should be subject to arbitration if they are allowed to proceed at all.

### D.    Plaintiffs' Class Allegations Do Not Alter the Binding Nature of Their Agreement to Arbitrate Their Claims.

Plaintiffs' assertion that this case should be certified as a class action is no impediment to arbitration.  The United States Supreme Court has held that procedural decisions, such as whether arbitration should proceed as a class action, are for the arbitrator to decide.  *See Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444

11

(2003) (finding that issues regarding what kind of arbitration proceeding the parties agreed to are procedural and for the arbitrator to decide); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (finding that "procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator."). Therefore, any dispute over whether Plaintiffs' claims can proceed as a class action is a procedural dispute and, thus, squarely within the broad scope of the arbitration agreements. *See Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.*, 489 F.3d 590 (3d Cir. 2007) (following *Green Tree* and finding that the question of whether the parties agreed to individualized or consolidated arbitration proceedings is a matter of procedure and an issue for the arbitrator to resolve); *St. Louis Chiropractic v. Fed. Ins. Co.*, 2008 WL 4056225 (D.N.J. Aug. 26, 2008) (relying on *Green Tree* to find that class action complaint is subject to dismissal based on existence of valid arbitration agreement); *Advanced Acupuncture Clinic, Inc. v. AllState Ins. Co.*, 2008 WL 4056244 (D.N.J. Aug. 26, 2008) (same). Otherwise, any plaintiff could avoid arbitration by merely making class allegations. *See, e.g., Howard v. Klynveld Peat Marwick Goerdeler*, 977 F.Supp. 654, 665 n. 7 (S.D.N.Y. 1997) (finding that a plaintiff, who has agreed to arbitrate all claims arising out of her employment, may not avoid arbitration by pursuing class claims).

## II.    If This Court Does Not Compel Arbitration, Plaintiffs' Claims Should Nevertheless Be Dismissed.

As defendants will demonstrate, Plaintiffs' claims should also be dismissed because Mercer-Buck's claims are untimely, Pascack's claims are contradicted by the factual allegations in the Complaint and Emergency Physician's claims are contradicted by the very documents upon which they rely.  Moreover, Plaintiffs lack standing to assert claims against ProAssurance Corporation and ProAssurance Indemnity, and, even if they had standing, the factual allegations in the Complaint are insufficient to sustain claims against these entities.

### A.    Mercer-Bucks' Claims Are Time-Barred.

The statute of limitations is six years for breach of contract, consumer fraud and accounting/unjust enrichment claims.  N.J.S.A. 2A:14-1.  "[A] claim accrues, for statute of limitations purposes, on the date on which the right to institute and maintain a suit first arose."  *County of Morris v. Fauver*, 707 A.2d 958, 971 (N.J. 1998) (internal quotations omitted).

Mercer-Bucks concedes that on or about October 30, 2003, ProAssurance Casualty notified Mercer-Bucks that it could purchase an ERP endorsement at a rate that was allegedly higher than that provided for in Mercer-Bucks' policy. Compl. ¶¶ 28, 30, 32-33.  That knowledge of an injury and its cause triggered the limitations period for each of Mercer-Bucks' claims. Thus, the limitations period expired on or about October 30, 2009, approximately one month before the filing

13

of this lawsuit, and therefore all of Mercer-Bucks' claims are untimely and should be dismissed.

### B.    Emergency Physicians Was Charged the Correct Premium.

Emergency Physicians also alleges that ProAssurance Casualty failed to charge the correct premiums on its ERP endorsement.   Emergency Physicians alleges that the effective date of the ERP endorsement was December 31, 2004 and the rate charged should have been the rate effective on that date.   Compl. ¶ 46. Emergency Physicians alleges that ProAssurance Casualty overcharged Emergency Physicians by applying the rate that went into effect on January 1, 2005, which they allege was higher.

This argument proceeds from the false premise that ProAssurance Casualty changed its rates for this filing on January 1, 2005.  In fact, ProAssurance Casualty did not change the rates in effect on December 31, 2004 until April 1, 2005. Dinger Decl. Exh. D.  Thus, the effective rate was the same on December 31, 2004 and January 1, 2005.  Accordingly, Emergency Physicians claims are belied by the very filing upon which they rely and, therefore, all claims asserted by Emergency Physicians should be dismissed.

### C.    It Is Apparent From the Face of the Complaint that Pascack Was Charged the Correct Premium.

As set forth above, the theory of Plaintiffs' case is that they should have been charged the rate in effect on the effective date of their ERP endorsement.

14

Mercer-Bucks and Emergency Physicians both allege that their ERP endorsements were effective December 31, 2003 and December 31, 2004, respectively, but they were improperly charged the rate effective January 1 of the following year. Compl. ¶¶ 32-33, 46-47.

Pascack similarly alleges that ProAssurance Casualty failed to charge premiums on its ERP "in accordance with our rules, rates, rating plan, and premiums applicable on the effective date of the endorsement." Compl. ¶ 40. Pascack alleges that "the effective date of the ERP endorsement was June 30, 2004." Compl. ¶ 40. But then, without any explanation and contrary to Mercer-Bucks and Emergency Physicians, Pascack alleges that the rate in effect on June 30, 2004 should *not* apply and instead they should have been charged some other, undisclosed lower rate. Compl. ¶¶ 38, 40-41. Clearly, in light of Plaintiffs' own theory of the case, there can be no dispute that ProAssurance Casualty applied the appropriate rate when it charged Pascack the rate in effect on June 30, 2004, the effective date of the ERP endorsement. Accordingly, Pascack has failed to allege a valid claim and all of its claims should be dismissed.

### D. Plaintiffs Lack Standing to Assert Claims Against ProAssurance Corporation and ProAssurance Indemnity.

Plaintiffs' claims should also be dismissed because they have no standing to assert claims against ProAssurance Corporation and ProAssurance Indemnity. *Storino v. Borough of Pt. Pleasant Beach*, 322 F.3d 293, 296 (3d. Cir. 2003); *see*

*also Weiner v. Bank of King of Prussia*, 358 F.Supp. 684, 694 (E.D.Pa. 1973)("Standing to sue is an essential threshold which must be crossed before any determination as to class representation under Rule 23 can be made. Without standing, one cannot represent a class, but standing to sue does not, of itself, support the right to bring a class action."). To establish standing, a "plaintiff must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant and the injury must be concrete and capable of being redressed by the court should the plaintiff prevail on the merits." *Taliaferro v. Darby Township Zoning Bd.*, 458 F.3d 181, 188-189 (3d Cir. 2006).

The Plaintiffs' claims for breach of contract, consumer fraud, and accounting/unjust enrichment claims arise from their Policies with ProAssurance Casualty—not with ProAssurance Corporation and ProAssurance Indemnity, which never entered into a contract with Plaintiffs or had any other dealings with Plaintiffs. Compl. ¶¶ 22-32, 34-40, 42-46. Thus, even assuming that Plaintiffs allegations are true, none of their alleged injuries are traceable to ProAssurance Corporation or ProAssurance Indemnity.

Without a "casual connection" between the Plaintiffs' alleged injuries and the conduct of either ProAssurance Corporation or ProAssurance Indemnity, Plaintiffs have no standing to assert their claims against ProAssurance Corporation or ProAssurance Indemnity. *See Johnson v. Geico Casualty Co.*, 2009 WL

4799214 (D.Del. Dec. 11, 2009)(finding plaintiffs lacked standing to bring putative class action against third-party insurers when plaintiffs' alleged injuries arose our of conduct relating to their policies with other insurers).    Without standing, Plaintiffs' claims against ProAssurance Corporation and ProAssurance Indemnity should be dismissed.

### E.    Plaintiffs Fail To Allege Sufficient Factual Allegations Against ProAssurance Corporation and ProAssurance Indemnity to Sustain Any Claims Against These Entities

A plaintiff must allege sufficient facts to put each individual defendant on notice of the claims against it.  *Iqbal*, 129 S.Ct. at 1949.  Plaintiffs, therefore, must plead sufficient facts, not against a group of defendants collectively, but for each individual defendant separately.  Lumping defendants together and jointly pleading against them is insufficient as a matter of law.  *Smith v. Cavalier Builders, Inc.*, 2008 WL 819960, *4 (D.N.J. 2008) ("plaintiffs' claim for breach of contract lumps together defendants Cavalier, Crest Homes and Lee Mills so that it is not clear what allegations are specific to Crest Homes.[]  Therefore, plaintiffs have not plead facts that if true could allow a fact finder to find in their favor and their claim for breach of contract against Crest Homes is dismissed." ); *id.* at *5; *Pietrangelo v. NUI Corp.*, 2005 WL 1703200, *10 (D.N.J. 2005) (holding that the plaintiff failed to comply with Fed. R. Civ. P. 8(a) because the complaint failed to differentiate between the defendants); *Kennilworth Partners L.P. v. Cendant Corp.*, 59

F.Supp.2d 417, 430 (D.N.J.1999) (dismissing complaint in which "plaintiffs [ ] lump[ed] the defendants together and ma[d]e general conclusory allegations of wrongdoing.").

As set forth above, Plaintiffs' claims arise from their relationships and dealings with ProAssurance Casualty.  Compl. ¶¶ 26-30, 34-39, 42-45.  There are no specific factual allegations against ProAssurance Corporation and ProAssurance Indemnity and, thus, it is unclear what role, if any, these two corporate entities allegedly played in this case.  Plaintiffs simply make the conclusory allegations that "***defendants*** violated the New Jersey Consumer Fraud Act" (Compl. ¶51), "***defendants*** breached their contracts with plaintiffs" (¶56) and "***[d]efendants*** have been unjustly enriched by their wrongful conduct" (¶61) without identifying what acts are attributable to each defendant.  (Emphasis added).  Without supporting factual allegations, these legal conclusions against ProAssurance Corporation and ProAssurance Indemnity fail to state claims.  *See*, *e.g.*, *Cavalier Builders, Inc.*, 2008 WL 819960 at *4-5; *Iqbal*, 129 S.Ct. at 1949.  Accordingly, all claims against ProAssurance Corporation and ProAssurance Indemnity should be dismissed in their entirety.

## <u>CONCLUSION</u>

For all the foregoing reasons, we respectfully request that the Court compel

arbitration or, in the alternative dismiss this case.

Dated: February 18, 2010

**STERN & KILCULLEN, LLC**
75 Livingston Avenue
Roseland, New Jersey 07068
Telephone: 973-535-1900

By: /s/ Michael Dinger
       Jeffrey Speiser
       Andrew S. Bosin
       Michael Dinger

**<u>OF COUNSEL:</u>**

Walter William Bates (*pro hac vice*)
Jay M. Ezelle (*pro hac vice*)
**STARNES & ATCHISON LLP**
Seventh Floor, 100 Brookwood Place
P.O. Box 598512
Birmingham, Alabama 35209
(205) 868-6000

*Attorneys for defendants ProAssurance*
*Corporation, ProAssurance Casualty Company,*
*and ProAssurance Indemnity Company, Inc.*