**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EMERGENCY PHYSICIANS OF ST. CLARE'S, LLC, MERCER BUCKS ORTHOPEDICS, PC, and PASCACK EMERGENCY SERVICES,<br><br>On behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br>v.<br><br>PROASSURANCE CORPORATION, PROASSURANCE CASUALTY COMPANY, and PROASSURANCE INDEMNITY COMPANY, INC.,<br><br>       Defendants. | Civil Action No.<br>09-cv-6244-WJM-MF<br><br>Motion Date: April 19, 2010<br>Oral Argument Requested<br><br><br>[Filed Electronically] |

---

**REPLY IN  FURTHER SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE COMPLAINT**

---

Jeffrey Speiser, Esq.
Andrew S. Bosin, Esq.
Michael Dinger, Esq.
**STERN & KILCULLEN, LLC**
75 Livingston Avenue
Roseland, New Jersey 07068
(973) 535-1900

Walter William Bates, Esq. (*pro hac vice*)
Jay M. Ezelle, Esq. (*pro hac vice*)
**STARNES & ATCHISON LLP**
100 Brookwood Place
P.O. Box 598512
Birmingham, Alabama 35209
(205) 868-6000

Attorneys for defendants ProAssurance Corporation,
ProAssurance Casualty Company, and ProAssurance
Indemnity Company, Inc.

**TABLE OF CONTENTS**

**Page**

I.   PLAINTIFFS' CLAIMS ARE DUE TO BE COMPELLED TO ARBITRATION……….1

    A.   Plaintiffs Cannot Overcome the Strong Federal and State Policies
        Favoring Arbitration………………………......................................................1

    B.   The Arbitration Agreements at Issue are Not Unconscionable Contracts
        of Adhesion…………………………………………………………………..2

        1.   The Subject Matter of the Contract and Public Interests Affected
            Thereby Do Not Evidence Unconscionability……………………….3

        2.   The Parties' Relative Bargaining Positions and the Degree of
            Economic Compulsion Motivating Plaintiffs Have No Effect
            on the Viability of the Arbitration Agreements…………………………...4

    C.   Plaintiffs Waived Their Rights to Pursue Their CFA Claims in Court…...............6

    D.   Plaintiffs Have Not Established that the Cost of Arbitration Renders Their
        Arbitration Provisions Unconscionable…..............................................9

II.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED………………………………..10

    A.   The Complaint Does Not Allege Facts Demonstrating That Plaintiffs
        Have Standing to Assert Claims Against ProAssurance Corporation
        and ProAssurance Indemnity…………………………………………………….10

    B.   Mercer-Bucks' Claims Are Time-Barred……………………………..........13

    C.   Plaintiffs Tacitly Admit That Pascack Was Charged the Correct Premium……..14

III.   CONCLUSION…………………………………………………………………..15

i

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Adamson v. Foulke Management Corp.*,
   2009 WL 5174642 (D.N.J. Dec. 18, 2009) ................................................................9

*Alamo Rent A Car, Inc. v. Galarza*,
   703 A.2d 961 (N.J. Super. Ct. App. Div. 1997) ........................................................1

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) ...................................................................................................1

*Bell Atlantic Corp v. Twombly*,
   127 S.Ct. 1955 (2007) ..............................................................................................11

*Blair v. Scott Specialty Gases*,
   283 F.3d 595 (3d Cir. 2002) .....................................................................................10

*Carmen v. Metrocities Mortg.*,
   2010 WL 421115 (D.N.J. Feb. 1, 2010) ...................................................................11

*Garfinkel v. Morristown Obstetrics & Gynocology Assoc.*,
   773 A.2d 665 (N.J. 2001) ....................................................................................... 6-8

*Gras v. Assoc. First Cap. Corp.*,
   786 A.2d 886 (N.J. Super. Ct. App. Div. 2001) ................................................3, 7, 8

*Green Tree Fin. Corp v. Randolph*,
   531 U.S. 79 (2000) .....................................................................................................2

*Harris v. Green Tree Fin. Corp.*,
   183 F.3d 173 (3d Cir. 1999) ......................................................................................1

*In re Franklin Mut. Funds Fee Litigation*,
   388 F.Supp.2d 451 (D.N.J. 2005) ............................................................................12

*Johnson v. Geico*,
   516 F.Supp.2d 351 (D. Del. 2007) ...........................................................................12

*Kuhn v. Terminix Int'l Co.*,
   No. A-1518-07T3, 2008 Unpub. LEXIS 2005(N.J. Super. Ct. App. Div. May 9, 2008) ..........8

*Martindale v. Sandvik, Inc.*,
   800 A.2d 872 (N.J. 2002) ...........................................................................................8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)................................................................................................1

*R.A.C. v. P.J.S., Jr.*,
    927 A.2d 97 (N.J. 2007)....................................................................................13

*Rockel v. Cherry Hill Dodge*,
    847 A.2d 621 (N.J. 2004)....................................................................................8

*Rudbart v. North Jersey Dist. Water Supply Comm's*,
    605 A.2d 681 (N.J. 1992)................................................................................2, 3

### STATUTES

N.J. STAT. ANN. § 2A:24-1, *et seq.* ......................................................................1

### OTHER AUTHORITIES

Federal Rule Civil Procedure 23.................................................................................12

Defendants ProAssurance Corporation, ProAssurance Casualty Company, and ProAssurance Indemnity Company, Inc. submit this Reply brief in further support of their Motion to Compel Arbitration or, alternatively, Dismiss.

## I. PLAINTIFFS' CLAIMS ARE DUE TO BE COMPELLED TO ARBITRATION.

### A. PLAINTIFFS CANNOT OVERCOME THE STRONG FEDERAL AND STATE POLICIES FAVORING ARBITRATION.

As the Court is aware, "federal law presumptively favors the enforcement of arbitration agreements." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (acknowledging the "liberal federal policy favoring arbitration"). Similarly, New Jersey's courts and legislature have clearly endorsed arbitration as a means of resolving disputes. *See, e.g.,* N.J. STAT. ANN. § 2A:24-1, *et seq.*; *Alamo Rent A Car, Inc. v. Galarza*, 703 A.2d 961 (N.J. Super. Ct. App. Div. 1997) (recognizing "strong public policy in our state favoring arbitration as a means of dispute resolution and requiring a liberal construction of contracts in favor of arbitration.") Thus, when determining both the existence and the scope of the Plaintiffs' arbitration agreements, there is a presumption in favor of arbitrability. *See, e.g.*, *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 650 (1986) (stating that "where the contract contains an arbitration clause, there is a presumption of arbitrability"). Moreover, the burden is on Plaintiffs to prove their

Consumer Fraud Act (CFA) claims should not be sent to arbitration.  *Green Tree Fin. Corp v. Randolph*, 531 U.S. 79, 91 (2000).   Plaintiffs have conceded arbitration is necessary as to the proposed national class and fail to carry their burden of overcoming the presumption favoring arbitration of their New Jersey class claims.[1]

### B.    THE   ARBITRATION   AGREEMENTS   AT   ISSUE   ARE   NOT   UNCONSCIONABLE CONTRACTS OF ADHESION.

"[T]he essential nature of a contract of adhesion is that it is presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the adhering party to negotiate except perhaps on a few particulars."  *E.g., Rudbart v. North Jersey Dist. Water Supply Comm's*, 605 A.2d 681, 685 (N.J. 1992).  To the extent the Court finds the arbitration agreements at issue are the product of adhesion, which Defendants contend has not been established, the mere fact that a contract is adhesive does not render it unenforceable.[2]  *Id*. at 686.  Instead, such a finding is the "beginning, not the end, of the inquiry."  *Id*.  The Court should also consider the "subject matter of the

---

[1]  Indeed, Plaintiffs' Opposition is singularly focused on attacking the viability of the arbitration agreements applicable to their New Jersey claims.  As such, Plaintiffs have implicitly conceded that their national class claims are due to be compelled to arbitration.

[2] Outside of unsupported statements about having few alternatives to the liability policies entered into with ProAssurance Casualty, Plaintiffs have failed to sufficiently establish that their ProAssurance Casualty policies and the arbitration agreements contained therein are contracts of adhesion.

contract, the parties' relative bargaining positions, the degree of economic compulsion motivating the 'adhering' party, and the public interests affected by the contract." *Id*. at 687.  Assuming *arguendo* that Plaintiffs' policies are adhesion contracts, a review of the *Rudbart* factors easily establishes that Plaintiffs' arbitration agreements are not unconscionable.

### 1.    The Subject Matter of the Contract and Public Interests Affected Thereby Do Not Evidence Unconscionability.

Plaintiffs contend that "important public policy interests involved in remedying violations of the CFA, as well as the significant public interests in protecting and retaining physicians within New Jersey to serve the public" warrant a finding that the arbitration clauses are unconscionable.  *See* Opp. Brief, p. 14. Plaintiffs' argument cannot withstand scrutiny.

First, the courts of New Jersey have concluded "that claims arising under the [CFA] may be heard and resolved through arbitration." *E.g., Gras v. Assoc. First Cap. Corp.*, 786 A.2d 886, 891 (N.J.  Super. Ct. App. Div. 2001).  Indeed, "[t]here is no inherent conflict between arbitration and the underlying purpose of the CFA" because, among other things, "plaintiffs can vindicate their statutory rights in the arbitration forum." *Id*. at 892.  Thus, "the public policy interests involved in remedying violations of the CFA" provide no support for a finding that the Plaintiffs' arbitration agreements are unconscionable.

Second, Plaintiffs' argument that New Jersey's interests in protecting and retaining physicians essentially voids their arbitration agreements is nonsensical. Under Plaintiffs' reasoning, no malpractice liability policy would ever contain an enforceable arbitration agreement. Further, if Plaintiffs' contention was true, the New Jersey legislature or Department of Banking and Insurance would have taken steps to eradicate arbitration agreements from professional liability policies—something it has not seen fit to do.[3] As such, the mere fact that Plaintiffs' policies cover medical malpractice is irrelevant to an analysis of the arbitration agreements' enforceability.

### 2. The Parties' Relative Bargaining Positions and the Degree of Economic Compulsion Motivating Plaintiffs Have No Effect on the Viability of the Arbitration Agreements.

Plaintiffs wish to portray themselves as unsophisticated parties negotiating policies under circumstances where they were without any other option but to accept the terms of the arbitration provisions. In reality, Plaintiffs are three New Jersey corporations comprised of highly-educated physicians holding ample resources to obtain answers to questions regarding, among other things, the "complicated insurance policy language" or the arbitration provisions existing

---

[3] Additionally, the New Jersey Department of Banking and Insurance approved a general ProAssurance Casualty policy form containing the arbitration language at issue here. This approved policy language, including the arbitration agreement, was incorporated into Plaintiffs' policies.

within each policy.[4]    Moreover, Plaintiffs admitted they were not without alternatives.  *See* Opp. Brief, p. 15.  At the time they entered their respective policies, each time they renewed their respective policies, and when they elected to purchase the tail coverage at issue, Plaintiffs had choices outside of entering into an agreement with ProAssurance Casualty.[5]    Finally, aside from conclusory statements, Plaintiffs have failed to establish that their ProAssurance Casualty policies were presented on a take-it-or-leave-it basis.

Plaintiffs also attempt to twist reality with their argument that economic issues motivated their purchase of the tail coverage at issue and that this motivation should void the arbitration agreements.  Opp. Brief, p. 15.  In truth, the arbitration provisions had been agreed to and in place for many years prior to the Plaintiffs' decision to purchase tail coverage from ProAssurance Casualty.  Further, as noted, purchasing tail coverage from ProAssurance Casualty was not Plaintiffs' exclusive coverage option.

---

[4] It should be noted the arbitration provisions at issue were contained in the original policies Plaintiffs' purchased and remained in those policies with each annual renewal and tail coverage purchase.  At no point prior to the filing of Plaintiffs' Opposition in this matter did Plaintiffs question the scope, validity, or fairness of the arbitration provisions at issue.

[5] ProAssurance Casualty has never had a monopoly on the New Jersey medical malpractice insurance market.  Moreover, the purpose of Plaintiffs' tail coverage could have easily been fulfilled through the purchase of prior acts or "nose" coverage with a new policy from a different insurance company.

Based on the foregoing, it is clear that Plaintiffs' unconscionability claims find no support in their allegations of unequal bargaining position and economic compulsion.

### C.   PLAINTIFFS WAIVED THEIR RIGHTS TO PURSUE THEIR CFA CLAIMS IN COURT.

Plaintiffs' CFA claims are rooted in allegations that "defendants engaged in unconscionable commercial practice which included deception, fraud, false pretense, false promise, and misrepresentation." Compl. ¶48. Plaintiffs further allege that "[d]efendants knowingly concealed and suppressed and omitted to state that they were charging plaintiffs for more costly ERP endorsements. . . ." *Id*. ¶49. The unambiguous language of the arbitration provisions Plaintiffs agreed to is sufficiently broad enough to encompass their fraud claims under the CFA:

> Any dispute, claim or controversy arising out of, relating to or in connection with this policy, its subject matter or its negotiation, as to the existence, validity, interpretation, performance, non-performance, enforcement, operation, breach of contract, breach of warrant, continuance or termination thereof or *any claim alleging fraud, deceit, or suppression of any material fact* or breach of fiduciary duty shall be submitted to binding arbitration. . . . The provisions hereof shall be a *complete defense* to any suit, action, or proceeding in any federal, state or local court or before any administrative tribunal with respect to any dispute, claim, or controversy arising under this policy.

Dinger Decl. Exhs. A, B, and C at ¶ XIII (emphasis added).

Plaintiffs cite *Garfinkel v. Morristown Obstetrics & Gynocology Assoc.*, 773 A.2d 665, 670 (N.J. 2001) for the proposition that "waiver of statutory rights

provisions in arbitration agreements must be clear and explicit." Opp. Brief, p. 17.

Importantly, however, the New Jersey Supreme Court also held in *Garfinkel* that a

party is not required to "list every imaginable statute by name to effectuate a

knowing and voluntary waiver of rights." *Id.* at 672. Indeed, the essential question

that the Court must decided is whether the arbitration agreements Plaintiffs signed

are specific enough to inform Plaintiffs that they are waiving their right to litigate a

CFA claim in court. *See, e.g., Gras v. Assoc. First Cap. Corp.*, 786 A.2d 886, 894

(N.J. Super. Ct. App. Div. 2001) (finding arbitration agreements signed by

plaintiffs are specific enough to inform plaintiffs that they were waiving their

statutory rights to litigation in a court). Plaintiffs' arbitration agreements are

undeniably broad enough to include their CFA claims and clear enough to put

Plaintiffs on notice that, by signing the agreements, they were waiving their rights

to litigate any CFA claims in court.

The arbitration language the Plaintiffs agreed to unquestionably and

unambiguously places Plaintiffs on notice that the asserted fraud claims brought

under the CFA are subject to arbitration. Indeed, the provisions explicitly cover

"any claim alleging fraud, deceit, or suppression." Dinger Decl. Exhs. A, B, and C

at ¶ XIII. In contrast, the cases Plaintiffs rely on address either non-specific or

conflicting and ambiguous arbitration provisions.[6]  They do not discuss arbitration

agreements that include the breadth and detail found in Plaintiffs' agreements with

ProAssurance Casualty.[7]

In addition to identifying a litany of potential claims subject to arbitration,

Plaintiffs' arbitration agreements also explicitly state that the arbitration agreement

is a "complete defense" to any suit, action, or proceeding initiated before any court

or administrative tribunal.   For these sophisticated, corporate Plaintiffs to now

---

[6] *See Garfinkel*, 773 A.2d at 668 ("[A]ny controversy or claim arising out of,
or relating to, this Agreement or the breach thereof, shall be settled by
arbitration"); *Rockel v. Cherry Hill Dodge*, 847 A.2d 621 (N.J. 2004)(including
agreement containing two conflicting, ambiguous arbitration clauses covering "any
controversy or claim arising out of or relating to this Agreement" and "any claim
or dispute, whether in contract, tort or otherwise . . . which arise out of or relate to
this contract or any resulting transaction or relationship. . . ."); *Kuhn v. Terminix
Int'l Co.*, No. A-1518-07T3, 2008 Unpub. LEXIS 2005 (N.J. Super. Ct. App. Div.
May 9, 2008)("The Purchaser and Terminix agree that any controversy or claim
between them arising out of or relating to the interpretation, performance, or
breach of any provision of this agreement shall be settled exclusively by
arbitration.")

[7] Plaintiffs contend that the absence of a specific reference to the CFA
makes the arbitration agreements inapplicable to their CFA claims.  Opp. Brief, p.
22.  As noted above, however, no such requirement exists.  Instead, the arbitration
provision simply needs be clear, unambiguous, and "sufficiently broad" to
reasonably encompass Plaintiffs' CFA claims.  *Martindale v. Sandvik, Inc.,* 800
A.2d 872, 883 (N.J. 2002) (finding an arbitration provision that did not specifically
reference a waiver of statutory rights and was arguably less inclusive than
Plaintiffs' provisions was enforceable under the "spirit" of *Garfinkel*); *see also
Gras*, 786 A.2d 886 (compelling arbitration in instance where arbitration
agreement did not name each state and federal statute the agreement covered, but
employed language reflecting that the plaintiff, in fact, knew that other options,
such as judicial remedies, existed).

claim that they did not realize they were waiving their right to a jury on claims, such as their CFA claims, is disingenuous. *See* Opp. Brief, p. 22 ("[T]he agreement provides no explanation, discussion or notice regarding the consequences of agreeing to arbitrate or what rights . . . are being waived.").

When consideration is given to the language of the arbitration provisions, the sophistication of the Plaintiffs, and the relevant case law, it is clear the arbitration agreements are broad enough to encompass Plaintiffs' CFA claims and that Plaintiffs were on notice of such coverage.

### D. PLAINTIFFS HAVE NOT ESTABLISHED THAT THE COST OF ARBITRATION RENDERS THEIR ARBITRATION PROVISIONS UNCONSCIONABLE.

As Plaintiffs noted, to establish arbitration costs are so high as to prevent Plaintiffs from effectively vindicating their rights in arbitration, Plaintiffs must present evidence to (1) show the projected fees that would apply, and (2) show their inability to pay those costs. Opp. Brief, pp. 22-23 (citing *Parilla v. IAP Worldwide Servs.*, 368 F.3d 269, 283-285 (3d Cir. 2004)). Stated differently, "a party seeking to declare arbitration costs to be unenforceable must offer some credible and substantiated evidence of that party's financial situation as well as the specific costs of arbitration." *Adamson v. Foulke Management Corp.*, 2009 WL 5174642 at * 7 (D.N.J. Dec. 18, 2009). Plaintiffs fail to support either factor.

9

The Court's consideration of Plaintiffs' cost argument should be brief because they have failed to offer any evidence—no bank statements, tax returns, affidavits, or other credible evidence—demonstrating their financial situation and inability to pay the alleged arbitration costs.  This is not surprising considering Plaintiffs are New Jersey corporations in the business of providing sophisticated medical services and there is no indication that their businesses are anything but profitable.  *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 607 (3d Cir. 2002) (finding that individual who have testified to having six figure income cannot claim that arbitration costs are "prohibitively expensive").  As such, any arguments regarding arbitration costs should be ignored.  Litigation is not free either.

## II.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED

### A.    THE COMPLAINT DOES NOT ALLEGE FACTS DEMONSTRATING THAT PLAINTIFFS HAVE STANDING TO ASSERT CLAIMS AGAINST PROASSURANCE CORPORATION AND PROASSURANCE INDEMNITY

Defendants move to dismiss Plaintiffs' claims against ProAssurance Corporation and ProAssurance Indemnity for lack of standing because the Complaint fails to allege facts demonstrating a causal connection between Plaintiffs' alleged injuries and the conduct of either ProAssurance Corporation or ProAssurance Indemnity.  As Defendants demonstrated in their moving brief, Plaintiffs' claims arise from their insurance policies with ProAssurance Casualty - not from any relationship or dealings with ProAssurance Corporation and

10

ProAssurance Indemnity.   Moving Brief, pp. 1-5, 15-17 (citing Compl. ¶¶22-32, 34-40, 42-46).

Faced with dismissal of the Complaint for lack of standing, Plaintiffs now attempt to reinvent their claims by misrepresenting the allegations in the Complaint and arguing that they have standing because all of the Defendants "engaged in a concerted scheme to wrongfully overcharge former policyholders for ERPs."  Opp. Brief, pp. 23-24.[8]   Plaintiffs cite ¶¶15-18 of the Complaint to support this argument, but those paragraphs simply: (i) identify where each Defendant is located and incorporated; (ii) describe the type of business each Defendant is engaged in; and (iii) describe each Defendant's corporate structure and relationship to one another.   Nowhere does the Complaint, or even Plaintiffs' brief, allege facts suggesting any concerted action between the Defendants, much less the time, place, or terms of any such purported "scheme."   Without such specific allegations, the Complaint fails as a matter of law.  *See, e.g., Bell Atlantic Corp v. Twombly*, 127 S.Ct. 1955, 1971 n.10 (2007) (stating that a complaint that "mention[s] no specific time, place, or person involved in the alleged conspiracies" and

---

[8] A Court may not accept allegations in opposition briefs as true because "Plaintiffs cannot use their brief to amend the Complaint." *Carmen v. Metrocities Mortg.*, 2010 WL 421115, *7 (D.N.J. Feb. 1, 2010).

"furnish[es] no clue as to . . . [who] supposedly agreed, or when and where the illicit agreement took place" does not comply with FED. R. CIV. P. 8).[9]

Plaintiffs also argue that they have standing because the Defendants are "juridically linked." Opp. Brief, pp. 24-26. This argument, however, also fails as a matter of law because "[t]he juridical link doctrine has no bearing on standing; rather, its place lies in a Rule 23 [class certification] analysis." *In re Franklin Mut. Funds Fee Litigation*, 388 F.Supp.2d 451, 462 (D.N.J. 2005). Not surprisingly, the two cases Plaintiffs cite to support their arguments dealt with class certification, not motions to dismiss. Opp. Brief, pp. 24-25 (citing *Wu v. MAMSI Life & Insur. Co.*, 256 F.R.D. 158 (D. Md. 2008) and *Marchwinski v. Oliver Tyrone Corp.*, 81 F.R.D. 487 (W.D. Pa. 1979)).

Finally, Plaintiffs simply ignore Defendants' argument that the Complaint fails to allege sufficient factual allegations against ProAssurance Corporation and ProAssurance Indemnity to sustain any claims against these entities. As

---

[9] Plaintiffs rely on *Johnson v. Geico*, 516 F.Supp.2d 351 (D. Del. 2007) to argue that "dismissal for lack of standing is not warranted at this stage of the case because discovery regarding the relationship between the Defendants as well as their concerted actions related to the scheme to overcharge former policy holders for ERP premiums is necessary." Opp. Brief pp. 23-24. *Johnson* is inapplicable, however, because: (i) as set forth *supra*, the Complaint does not allege any "concerted actions" or "scheme" between Defendants; and (ii) in *Johnson* "all three companies [we]re named on the correspondence to Plaintiffs concerning their PIP claims" and the plaintiffs did not know which defendant company was actually handling their PIP claims (*Johnson*, 516 F.Supp.2d. at 356). Here, it is undisputed that Plaintiffs dealt solely with ProAssurance Casualty.

Defendants demonstrated in their moving brief, the Complaint improperly lumps all three Defendants together and makes general conclusory allegations of wrongdoing leaving Defendants to guess what role, if any, ProAssurance Corporation and ProAssurance Indemnity played in this case.  Moving Brief, pp. 17-18.  As a matter of law, this pleading deficiency warrants dismissal of all claims against ProAssurance Corporation and ProAssurance Indemnity.

### B.   MERCER-BUCKS' CLAIMS ARE TIME-BARRED

Mercer-Bucks concedes that "[a] cause of action accrues when the plaintiff becomes aware of an injury and a causal relationship between the injury and an actor, ***but need not know that the conduct is tortious or legally wrongful.***"  Opp. Brief p. 30 (internal quotation omitted)(emphasis added).  Mercer-Bucks also admits that on October 30, 2003, ProAssurance Casualty sent Mercer-Bucks letters "indicating pricing that would be charged when and if the tail was purchased", which was allegedly too high.  Opp. Brief, pp. 32-34 and Ex. F; *see also* Compl. ¶30.  Thus, Mercer-Bucks was aware of the alleged overcharge on October 30, 2003, and its claims are only timely if the discovery rule applies.

"Under the discovery rule . . . the limitations period does not commence until the injured party actually discovers or should have discovered through reasonable diligence the fact essential to the cause of action." *R.A.C. v. P.J.S., Jr.*, 927 A.2d 97, 106 (N.J. 2007).  The discovery rule is inapplicable here, however,

13

because neither the Complaint—nor Plaintiffs' brief—state any facts that were hidden from, or not accessible to, Mercer-Bucks that it needed to determine whether it was overcharged and therefore had a cause of action.  The fact that it chose to ignore these facts for six years does not toll the statute of limitations.

Mercer-Bucks therefore desperately argues that "[n]othing in the [October 30, 2003] letter *required* any action, analysis or payment before January 30, 2004" (Opp. Brief p. 33 (emphasis added)), as if that somehow obviates the fact that it knew on October 30, 2003 that it would be overcharged for the ERP endorsement. That Mercer-Bucks was not "required" to file a lawsuit on October 30, 2003, or January  30, 2004 for that matter, has no bearing on the fact that Mercer-Bucks was aware, or should have been aware, of its alleged injury at that time and therefore the six-year statute of limitations began to run on that day.  Accordingly, Mercer-Bucks' claims are time-barred and should be dismissed.

### C.    PLAINTIFFS TACITLY ADMIT THAT PASCACK WAS CHARGED THE CORRECT PREMIUM

Defendants demonstrated in their Moving Brief that Pascack was not overcharged because: (i) pursuant to its Policy with ProAssurance Casualty, the cost of its ERP endorsement was to be computed "in accordance with the rules, rates, rating plan and premiums applicable on the effective date of the endorsement"; (ii) the effective date of its ERP endorsement was June 30, 2004; and (iii) it was charged the rate in effect on June 30, 2004.  Moving Brief, pp. 14-

15.  Pascack responds that it should have been charged the rates in effect in 2003 when Pascack renewed its policy even though it was not the "premium applicable on the effective date of the endorsement," which it concedes is the manner in which the premium is calculated.  Opp. Brief pp. 28-29.  Not only is this illogical, but it contradicts the other Plaintiffs, who claim they have a cause of action because they were not charged the rate in effect on the effective date of their ERP endorsements.  Compl. ¶¶32-33, 46-47.  Accordingly, Pascack's claims should be dismissed.[10]

## III.   CONCLUSION

For all the foregoing reasons and those contained in the Moving Brief, we respectfully request that the Court either compel arbitration or, in the alternative, dismiss this case.


Dated: April 12, 2010

By: /s/ Michael Dinger
Michael Dinger

---

[10] Although Defendants maintain that Emergency Physicians was charged the correct premium, Defendants withdraw that argument rather than engage in an evidentiary dispute at the pleadings stage.