**STERN & KILCULLEN, LLC**
Jeffrey Speiser, Esq.
Andrew S. Bosin, Esq.
Michael Dinger, Esq.
75 Livingston Avenue
Roseland, New Jersey 07068
(973) 535-1900

**STARNES & ATCHISON LLP**
Walter William Bates, Esq. (*pro hac vice*)
Jay M. Ezelle, Esq. (*pro hac vice*)
100 Brookwood Place
P.O. Box 598512
Birmingham, Alabama 35209
(205) 868-6000

Attorneys for defendants ProAssurance Corporation,
ProAssurance Casualty Company, and ProAssurance
Indemnity Company, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EMERGENCY PHYSICIANS OF ST. CLARE'S, LLC, MERCER BUCKS ORTHOPEDICS, PC, and PASCACK EMERGENCY SERVICES,<br><br>On behalf of themselves and all others similarly situated,<br><br>           Plaintiffs,<br>v.<br><br>PROASSURANCE CORPORATION, PROASSURANCE CASUALTY COMPANY, and PROASSURANCE INDEMNITY COMPANY, INC.,<br><br>           Defendants. | Civil Action No. 09-cv-6244-WJM-MF<br><br>**SUPPLEMENTAL DECLARATION OF MICHAEL DINGER**<br><br>**Oral Argument Requested**<br><br><br>**[Filed Electronically]** |

1.      I am an associate in the firm Stern & Kilcullen, LLC, counsel for defendants ProAssurance Corporation, ProAssurance Casualty Company, and ProAssurance Indemnity Company, Inc.  At the request of the Court, I submit this supplemental declaration in connection with defendants' pending Motion to Compel Arbitration or, alternatively, Dismiss.

2.      A copy of the healthcare professional liability policy between ProNational Insurance Company and Emergency Physicians of Saint Clare's LLC is attached hereto as **Exhibit A**.

3.      A copy of the healthcare professional liability policy between ProNational Insurance Company and Mercer-Bucks Orthopaedics is attached hereto as **Exhibit B**.

4.      A copy of the healthcare professional liability policy between ProNational Insurance Company and Pascack Emergency Services PA is attached hereto as **Exhibit C**.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: July 22, 2010

Michael Dinger

# EXHIBIT A

# HEALTH CARE PROFESSIONAL LIABILITY POLICY

# DEFINITIONS

As used in this **policy**, the following terms shall have the following meanings:

**Continuous coverage effective date** means the effective date of the earliest **policy** issued by **us** to the **insured**, which **policy** is followed by a continuous and unbroken period in which **we** provided coverage to the **insured**.

**Cover Page** means the Health Care Professional Liability Policy Cover Page, or any renewal or modification thereof.

**Coverage Summary** means the Health Care Professional Liability Policy Coverage Summary, or any renewal or modification thereof.

**Damages** means all amounts of money which are payable under this **policy** because of injury, including death.

**Insured** means any **insured dentist**, any **insured organization**, any **insured physician**, any **insured paramedical employee**, and any **other covered employee**.

**Insured dentist** means any person designated as such in the **Coverage Summary**.

**Insured organization** means any partnership, professional corporation, professional association, limited liability company, or other entity designated as an **Insured Organization** in the **Coverage Summary**.

**Insured paramedical employee** means any person designated as such in the **Coverage Summary**.

**Insured physician** means any person designated as such in the **Coverage Summary**.

**Insured professional** means any **insured dentist** or **insured physician**.

**Other covered employee** means any person whose duties include the prevention, diagnosis and treatment of illness or injury, other than a person practicing as a physician, surgeon, dentist, psychologist, nurse midwife, nurse anesthetist, nurse practitioner, physician's assistant, surgeon's assistant, perfusionist, optometrist, cytotechnologist, emergency medical technician, or anesthesiologist assistant, or any person licensed, certified, or otherwise authorized to deliver advanced level health care in the absence of direct supervision by a licensed physician.

**Other insurance** means any valid and collectible insurance, self insurance, self-insured retention, self-insured trust, or risk transfer instrument of any kind, other than this **policy**, that provides defense or indemnity to any **insured** for any claim, loss, liability, or **damages** covered by this **policy**.

**Peer review services** means service by an **insured professional** while acting within the scope of his or her duties as a member of:

A.  a utilization and quality control peer review organization acting under contract with a federal or state health care agency to review the professional activities of health care providers;

B.  a duly constituted hospital, surgery center or long-term health care facility utilization review committee providing review of services furnished by the institution and members of its medical or dental staff;

C.  a duly constituted hospital, surgery center, or dental center staff committee, consisting solely of members of the medical or dental staff of such hospital, surgery center, or dental center for the evaluation and improvement of quality of care;

D.  a duly constituted hospital peer review committee, consisting solely of members of the medical or dental staff of such hospital, having responsibility for: (1) reviewing qualifications and credentials of persons seeking appointment or reappointment to a hospital medical staff, (2) evaluating the clinical or administrative competence of persons so appointed, (3) matters concerning limiting the scope of hospital privileges of persons on a hospital medical staff, or (4) matters concerning the dismissal or discharge of persons from a hospital medical staff; or

E.  any peer review program conducted by **us**; and

F.  with respect to **insured dentists** only, a duly constituted dental society peer review committee having responsibility for evaluating the performance of services of other dentists or dental auxiliary personnel at the request of government agencies, patients, dentists, providers of dental benefits, or third party insurers.

**Policy** means the **Cover Page**, the forms listed thereon, and any endorsements issued from time to time. The **policy** terms in effect at the time a **professional incident** is first **reported** shall apply to that **professional incident**.

**Policyholder** means the person or entity designated as such in the **Coverage Summary**.

**Policy period** means the period specified as such in the **Coverage Summary**.

**Professional incident** means:

A.  a single act or omission, or a series of related acts or omissions during a continuing course of **professional services**, arising out of the rendering of, or failure to render, **professional services** to any one person by an **insured** or any person for whose acts or omissions an **insured** is legally responsible, which results, or is likely to result, in **damages; or**

B.  a single act or omission or a series of related acts or omissions by an **insured physician** or **insured dentist** during the performance of **peer review services** which results, or is likely to result, in **damages**.

For purposes of this definition, treatment of mother and fetus (or fetuses) from conception through postpartum care constitutes a single **professional incident**.

**Professional services** means the provision of medical or dental services, including treatment, making diagnoses and rendering opinions or advice.

**Report, reported,** and **reporting** mean, when used with respect to a **professional incident**, the giving by an **insured** or his or her representative of notice of such **professional incident** either in writing or by telephone to **our** Claims Department specifying (1) the date, time, and place of the **professional incident**, (2) a description of the **professional incident**, (3) the name, address, and age of the patient or claimant, (4) the names of witnesses, including other treating physicians, and (5) the circumstances resulting in the **professional incident**.

**Reporting Endorsement** (or "Tail Coverage") means an endorsement issued with respect to an **insured** under Section VI, VII or VIII of the Professional Liability Coverage Part to provide coverage for **professional incidents** first **reported** after the insurance provided by this **policy** terminates as to such **insured**.

**Retroactive date** means the **retroactive date** applicable to each **insured** as specified in the **Coverage Summary**.

**We, our** and **us** refer to the company that issued this **policy** and is designated as "THE COMPANY" on the **Cover Page**.

# PROFESSIONAL LIABILITY COVERAGE PART

I.  **INSURING AGREEMENT**

**We** agree to pay on behalf of each **insured**, subject to the applicable limit of liability, all sums which such **insured** shall become legally obligated to pay as **damages** because of any **professional incident** which occurs on or after the **retroactive date** applicable to such **insured** and which is first **reported** during the **policy period**; provided, however, that **insured paramedical employees** and **other covered employees** are covered only for **professional incidents** that occur while such persons are employed by an **insured organization** or **insured professional** and acting within the scope of such employment and while engaged in the performance of **professional services** which such persons hold any required license to perform. This insurance applies to **professional incidents** arising out of **professional services** or **peer review services** rendered anywhere in the world, provided that any resulting claim or suit is prosecuted within the United States of America, its possessions or territories.  This insurance does not apply to any claim or suit asserted, filed, pursued, or prosecuted in or pursuant to the authority of any court, tribunal, or other governmental or legal authority outside the jurisdiction of the United States of America, its possessions and territories.

II.  **INVESTIGATION, DEFENSE AND SETTLEMENT**

**We** have the right to investigate any **professional incident** that **we** deem expedient.  **We** have the right and duty to defend any suit against an **insured** seeking **damages** which, if awarded, would be covered by this **policy**, even if any of the allegations of the suit are groundless, false or fraudulent, and **we** have the right, but not the duty, to defend any claim against an **insured** seeking such **damages**.  **We** have the right to select defense counsel in any such claim or suit defended by **us**.  **We** will not pay fees and expenses of any legal counsel not retained by **us**.  If a claim or suit is asserted against more than one **insured**, **we** may retain the same legal counsel to defend all **insureds**, consistent with counsel's ethical duties to avoid conflict of interest.

**We** have the right to settle any claim or suit against an **insured** seeking **damages** which, if awarded, would be covered by this **policy**; provided that no such settlement will be made without the written consent of the **policyholder** unless (a) the **policyholder** cannot be located and contacted after reasonable efforts are made by **us**; or (b) the settlement is made after a verdict or judgment has been rendered against an **insured**.

**We** shall not be obligated to take an appeal from any judgment against an **insured**.

**We** shall not be obligated to pay **damages** or to defend any suit after the applicable limit of liability has been exhausted.

### III.    EXCLUSIONS

**We** will not pay **damages** because of any of the following, and **we** will not provide a defense for any suit alleging any of the following:

A.    In the case of any **insured professional**, liability arising out of the rendering of, or failure to render, **professional services** by any person other than such **insured professional** for whose acts or omissions such **insured professional** is liable solely by reason of his or her status as a member, partner, officer, director or shareholder of any partnership, professional corporation, professional association, limited liability company, or other legal entity (other than an **insured organization**);

B.    Liability of an **insured** as an owner, superintendent, administrator, director, trustee, or officer of any hospital, sanitarium, clinic with bed and board facilities, nursing home, ambulatory surgery center, laboratory, health maintenance organization, preferred provider organization, exclusive provider organization or other similar health care entity, or other business enterprise;

C.    Liability assumed by an **insured** under any contract or agreement, whether oral, written or implied, except to the extent that coverage for such liability would be available to such **insured** in the absence of such contract or agreement;

D.    Liability arising out of any willful, wanton, fraudulent, criminal or malicious act or omission;

E.    Liability arising in whole or in part out of sexual activity, or acts in furtherance of sexual activity whether under the guise of **professional services** or not;

F.    Injury to any employee of an **insured** unless arising from the treatment of the employee as a patient of such **insured**;

G.    Any obligation for which an **insured** or any carrier as insurer may be held liable under any workers' compensation, unemployment compensation, disability benefits, or any similar law;

H.    Liability arising out of any act or omission of an **insured** (1) for which such **insured** does not hold any required license to perform, (2) which occurs during any time such **insured's** license to practice his or her profession has been suspended, revoked or voluntarily surrendered, or (3) which constitutes a violation of any restriction imposed upon such license;

I.    Liability arising out of any antitrust violation (except for antitrust violations arising from **peer review services** for which coverage is otherwise afforded), unfair competition, discrimination, or any other act or omission which violates any statute, ordinance or regulation imposing any fine, penalty or other sanction;

J.    Any **professional incident** which has been **reported** to another insurance carrier prior to the **continuous coverage effective date**; any **professional incident** which occurred prior to the **continuous coverage effective date**, if on such date, the **insured** knew or believed, or had reason to know or believe, that such **professional incident** had occurred; or any **professional incident** that occurred during a period in which the **insured** was not covered under a policy of professional liability insurance;

K.    Liability arising out of any claim or investigation instituted by a patient of any **insured** alleging errors or omissions by the **insured** in billing statements for **professional services** rendered to such patient;

L.    Liability arising out of any **professional incident** that occurs while an **insured** is impaired by alcohol or drugs; or

M.    Liability for punitive or exemplary damages (including any multiple of compensatory damages, such as double or treble damages) awarded against an **insured**.

### IV.    LIMITS OF LIABILITY AND DEDUCTIBLES

The limits of liability specified in the **Coverage Summary** as applicable to each **insured professional** shall apply to all claims or suits made or brought against such **insured professional** (except that claims or suits arising out of the rendering of, or failure to render, **professional services** by any person other than such **insured professional** for whose acts or omissions such **insured professional** may be held liable as a member, partner, officer, director or shareholder of an **insured organization** shall be charged against the limit of liability of the **insured organization**).

The limits of liability specified in the **Coverage Summary** as applicable to each **insured paramedical employee** shall apply to all claims or suits made or brought against such **insured paramedical employee**.

The limits of liability specified in the **Coverage Summary** as applicable to an **insured organization** shall apply to all claims or suits made or brought against (1) the **insured organization**; (2) any **other covered employee**; and (3) any **insured professional**, provided such liability arises out of the rendering of, or failure to render, **professional services** by any person other than such **insured professional** for whose acts or omissions such **insured professional** is liable solely by reason of his or her status as a member, partner, officer, director or shareholder of the **insured organization**.

The limit of liability specified in the **Coverage Summary** for each **insured** as "each professional incident" is the total of **our** liability to such **insured** resulting from any one **professional incident**. The limit of liability stated in the **Coverage Summary** for each **insured** as "annual aggregate" is the total limit of **our** liability to such **insured** resulting from all **professional incidents** which are first **reported** during the **policy period**.

The limit of liability shall apply regardless of:

A.    the number of persons or entities claiming **damages** covered by this **policy**;

B.    the number of claims or suits brought on account of a **professional incident**;

C.    the number of **insureds** under this **policy**; or

D.    the inclusion of an additional insured.

If Additional Limits of Liability are shown in the **Coverage Summary** for any **insured**, such Additional Limits of Liability shall apply only to (1) **professional incidents** which occur after the Additional Coverage Retroactive Date shown for such **insured** in the **Coverage Summary** and (2) after exhaustion of the Primary Limits of Liability applicable to such **insured**.

**We** shall have the right to allocate **damages** or supplementary payments among claimants, **insureds**, and policies as **we** deem appropriate.

If a **Reporting Endorsement** is issued, **our** liability for all **professional incidents** first **reported** after the effective date of the **Reporting Endorsement** shall be as stated therein.

If a "Deductible" is shown for any **insured** in the **Coverage Summary** as applicable to this Coverage Part, such **insured** shall be liable for each **professional incident reported** in an amount equal to the Deductible shown in the **Coverage Summary**, and **our** limit of liability will be reduced by such amount. In the event **we** pay on behalf of an **insured** all or part of the deductible as **damages**, the **policyholder** shall reimburse **us** for the amount of any such payment within thirty (30) days after written demand. The **policyholder** agrees to pay all costs incurred by **us**, including attorneys' fees and court costs, incurred by **us** in collecting any reimbursement.

V.    **SUPPLEMENTARY PAYMENTS**

**We** will pay, in addition to the applicable limit of liability:

A.    all expenses incurred by **us**, all costs taxed against an **insured** in any suit defended by **us**, and interest accruing on a judgment or award against an **insured** before **we** have paid, tendered, or deposited in court that part of the judgment which does not exceed the limit of **our** liability thereon, provided that **we** will pay interest only on that portion of the judgment or award that does not exceed the applicable limit of liability; and

B.    premiums on appeal bonds required in any suit defended by **us**, and premiums on bonds to release attachments in any such suit, for an amount not in excess of the applicable limit of liability of this **policy**, but **we** shall have no obligation to apply for or furnish any such bond.

VI.    **REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED ORGANIZATIONS**

In the event of termination of the insurance afforded by this **policy**, either by nonrenewal or cancellation, any **insured organization** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of the endorsement), to have issued a **Reporting Endorsement** providing coverage for **professional incidents** occurring prior to the termination date and otherwise covered by this **policy**, but which are first **reported** after such termination date. Such right must be exercised by such **insured organization** by making payment to **us** not later than thirty (30) days after such termination date.

Notwithstanding the foregoing, if the insurance provided by this **policy** to any **insured organization** which shares limits with one or more **insured professionals** terminates by reason of the dissolution or other termination of activity by such **insured organization**, such **insured organization** shall continue to be covered for **professional incidents** which occur while such **insured organization** is active, even though any such **professional incident** may not be **reported** until after the **insured organization** ceases activity, as long as such **professional incident** is first **reported** within the **policy period** applicable to the **insured professionals** with whom the **insured organization** shares limits.

The **Reporting Endorsement** issued to an **insured organization** pursuant to this Section VI shall provide coverage only for such **insured organization** and its **other covered employees**. Such **Reporting Endorsement** shall not provide coverage to any **insured professional** or **insured paramedical employee**. **Insured professionals** and **insured paramedical employees** must obtain individual **Reporting Endorsements** as provided in Sections VII and VIII below.

VII.    **REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PROFESSIONALS**

If the insurance afforded by this **policy** to an **insured professional** terminates, either by nonrenewal or cancellation, such **insured professional** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of the endorsement), to have issued a policy and a **Reporting Endorsement**, in the form then used by **us**, providing coverage for **professional incidents** occurring prior to the termination date and for which such **insured professional** is otherwise covered by this **policy**, but which are first **reported** after such termination date. Such right must be exercised by an **insured professional** by making payment to **us** not later than thirty (30) days after such termination date.

Notwithstanding the foregoing, a **Reporting Endorsement** shall be issued in accordance with **our** rules on the effective date of the endorsement to an **insured professional** automatically and without payment of any additional premium in case the termination of insurance results from:

A. the death of such **insured professional**;

B. the permanent and total retirement by such **insured professional** from the practice of medicine, but only if such **insured professional** shall have been insured continuously by **us** for the preceding five years. The **insured professional** must submit an affidavit satisfactory to **us** in which the **insured professional** confirms an intention to permanently and totally retire from the practice of medicine and agrees to pay a premium for the **Reporting Endorsement** if such **insured professional** recommences the practice of medicine within five years after delivering such affidavit;

C. the permanent and total disability of such **insured professional** resulting in the inability to continue the professional activity or endeavor in which such **insured professional** was thereofore engaged, but only if such permanent and total disability:

   1. shall have continued without significant interruption for a term of not less than six months prior to termination; and

   2. shall have required regular treatment by a legally qualified medical or surgical practitioner other than such **insured professional**.

**VIII. REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PARAMEDICAL EMPLOYEES**

If the insurance afforded by this **policy** to an **insured paramedical employee** terminates, either by nonrenewal or cancellation, such **insured paramedical employee** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of the endorsement), to have issued a policy and a **Reporting Endorsement**, in the form then used by **us** for individual coverage, providing coverage for **professional incidents** occurring prior to the termination date and for which such **insured paramedical employee** is otherwise covered by this **policy**, but which are first **reported** after such termination date. Such right must be exercised by an **insured paramedical employee** by making payment to **us** not later than thirty (30) days after such termination date.

Notwithstanding the foregoing, if the insurance provided by this **policy** to any **insured paramedical employee** who shares limits with one or more **insured professionals** terminates, such **insured paramedical employee** shall continue to be covered for **professional incidents** that occured while such **insured paramedical employee** was employed by the **insured professional** with whom he or she shares limits of liability, even though any such **professional incident** may not be **reported** until after the **insured paramedical employee** is no longer so employed, as long as such **professional incident** is first **reported** within the **policy period** applicable to the **insured professional** with whom the **insured paramedical employee** shares limits.

# GENERAL CONDITIONS

**I. PREMIUM**

All premiums shall be computed in accordance with **our** rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

**II. RIGHTS AND DUTIES OF POLICYHOLDER**

Unless named as an **insured** in the **Coverage Summary**, the **policyholder** is not an **insured** and shall have no coverage under this **policy**. However, the **policyholder** shall pay all premiums, receive all return premiums, provide any consents, including consent to settle, as may be required, and receive all notices and invoices under this **policy**. All provisions in the General Conditions which are applicable to the **insureds** shall also apply to the **policyholder**.

## III.   INSPECTION

**We** shall be permitted but not obligated to inspect any **insured**'s property and operations at any time. Neither **our** right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of any **insured** or others, to determine or warrant that such property or operations are safe, healthful, or in compliance with any law, rule or regulation.

## IV.   INSUREDS' DUTIES

A.   When an **insured** becomes aware of any claim or suit to which this **policy** applies, or any incident which is likely to result in such a claim or suit, such **insured** or his or her representative must **report** such incident, claim or suit as soon as practicable.

B.   Each **insured** shall cooperate with **us** and, upon **our** request, assist in making settlements, in the conduct of suits, and in enforcing any right of contribution or indemnity against any person or organization who may be liable to such **insured** because of injury with respect to which insurance is afforded under this **policy**, and the **insured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. No **insured** shall make any payment, assume any obligation, accept responsibility or provide information concerning the incident except to **us** or such **insured**'s legal counsel.

C.   If a claim is made or suit is brought against any **insured**, such **insured** shall immediately forward to **us** every demand, notice, summons or other process received by such **insured** or any representative of such **insured**.

D.   No **insured** shall alter, destroy, or dispose of patient records or otherwise misrepresent or conceal facts pertinent to any incident, claim or suit.

E.   Each **insured** shall notify **us** in writing, within thirty (30) days after the occurrence of any one or more of the following:

   1.   Such **insured** undergoes treatment, or is advised by a physician, peer review committee, hospital credentialling committee or licensing agency to undergo treatment for alcohol, drug or other substance abuse, or for psychiatric illness;

   2.   Such **insured** suffers an illness or physical defect which impairs, or is likely to impair, such **insured's** ability to practice for a period of thirty (30) days or more;

   3.   Such **insured** is convicted of, or pleads guilty or no contest to, any felony or misdemeanor other than minor traffic offenses;

   4.   Such **insured's** license to practice medicine or dentistry, or to dispense medicine, or otherwise to deliver health care services of any type, is revoked, suspended, surrendered or limited in any respect, or such **insured** is called to appear before any licensing agency, peer review committee, professional standards review committee or credentialling committee in a proceeding seeking to terminate, revoke or limit such **insured's** employment or privilege to practice; or

   5.   Such **insured's** privilege to practice is terminated, revoked or limited by the **policyholder**, any hospital or other employer, whether by reason of termination of employment or otherwise.

If any **insured** fails to comply with any obligations under this **policy**, **our** obligations to such **insured** under this **policy** shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

## V.   CLAIMS AGAINST US

No claim shall lie against **us** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this **policy**, nor until the amount of any **insured**'s obligation to pay shall have been finally determined either by judgment against an **insured** after actual trial or by written agreement of such **insured**, the claimant, and **us**. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this **policy** to the extent of the insurance afforded by this **policy**. No person or organization shall have any right under this **policy** to join **us** as a party to any action against an **insured** to determine the **insured**'s liability, nor shall **we** be impleaded by an **insured** or any legal representative.

**Our** liability in any cause of action based on allegations that **we** did not fulfill **our** obligations to any **insured** in good faith shall not exceed the value of the **insured's** assets that are legally subject to attachment and levy by a judgment creditor after payment of all sums available through this **policy**. For purposes of this limitation, the "value of the **insured's** assets" shall be determined as of the date of the judgment rendered against the **insured** and shall not include the subject cause of action against **us**.

Bankruptcy or insolvency of any **insured** or any **insured's** estate shall not relieve **us** of any of **our** obligations hereunder.

Any claim against **us**, including without limitation any cause of action that relates to or arises in connection with this **policy**, or that is based on allegations that **we** did not fulfill **our** obligations to any **insured** in good faith, shall be brought in arbitration pursuant to Section XIII below.

## VI.    OTHER INSURANCE

A.    With respect to loss arising from **peer review services** (other than **peer review services** performed on **our** behalf), the insurance provided by this **policy** is excess over any **other insurance**.

B.    Insurance provided to any **insured** by "Additional Limits of Liability," as specified in the **Coverage Summary**, shall apply only after exhaustion of the "Primary Limits of Liability" specified in the **Coverage Summary** for such **insured**. Insurance provided by Additional Limits of Liability shall be in excess of, and shall not contribute with, any **other insurance**. If Additional Limits of Liability are provided, **we** shall, after the Primary Limits of Liability have been exhausted, have no duty to defend any suit that any other insurer has a duty to defend.

C.    Except as provided in A or B, and any endorsement forming a part of this **policy**, this insurance is primary.

D.    When both this insurance and **other insurance** apply to loss on the same basis, whether primary, excess or contingent, **we** shall not be liable under this **policy** for a greater proportion of the loss than that stated in the applicable contribution provision below:

1.    If all of such **other insurance** provides for contribution by equal shares, **we** shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of loss is paid, and with respect to any amount of loss not so paid, the remaining insurers then continue to contribute in equal shares of the remaining amount of the loss until each insurer has paid its limit in full or the full amount of the loss is paid.

2.    If any such **other insurance** does not provide for contribution by equal shares, **we** shall not be liable for a greater proportion of such loss than the applicable limit of liability under this **policy** for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

## VII.    SUBROGATION

In the event of any payment under this **policy**, **we** shall be subrogated to any **insured**'s rights of recovery therefor against any person or organization, and any such **insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. No **insured** shall do anything to prejudice such rights.

## VIII.    ASSIGNMENT

No **insured** may assign any interest in this **policy**. If, however, any **insured** shall die, such insurance as afforded by this **policy** shall apply to such **insured**'s legal representative, as an **insured**, but only while acting within the scope of the representative's duties as such.  No **insured** shall assign any cause of action against **us** that relates to or arises in connection with this **policy**, or that is based on allegations that **we** did not fulfill **our** obligations to any **insured** in good faith.

## IX.    CHANGES

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or change in any part of this **policy** or estop **us** from asserting any right under the terms of this **policy**; nor shall the terms of this **policy** be waived or changed, except by endorsement issued to form a part of this **policy**.

## X.    CANCELLATION

This **policy**, or coverage of any **insured** thereunder, may be canceled by the **policyholder** by mailing to **us** written notice stating when thereafter the cancellation shall be effective. This **policy**, or coverage of any **insured** thereunder, may be canceled by **us** by mailing to the **policyholder**, at the address shown in the **Coverage Summary**, written notice stating when such cancellation shall be effective, in accordance with applicable state law. The effective date and hour of cancellation stated in the notice shall become the end of the **policy period** for each **insured** to which such cancellation applies. Delivery of such written notice either by the **policyholder** or by **us** shall be equivalent to mailing. If the **policyholder** cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If **we** cancel, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

## XI.    RENEWAL OF POLICY

Neither the **policyholder** nor **we** have any obligation to renew this **policy**. Any renewal will be on the policy forms and endorsements then in effect. If **we** elect not to renew this **policy**, or coverage of any **insured** thereunder, notice of nonrenewal shall be given in accordance with applicable state law.

**XII.   FRAUD AND MISREPRESENTATIONS**

By acceptance of this **policy**, all **insureds** agree that the statements in the **Coverage Summary** and in their respective applications or renewal applications for insurance are their agreements and representations, that this **policy** is issued in reliance upon the truth of such representations, and that this **policy** embodies all agreements existing between themselves and **us** or any of **our** agents relating to this insurance. In the event of any fraud, material misrepresentation or omission by any **insured** in any application or renewal application for insurance, this **policy** is void as to the party committing such fraud, material misrepresentation or omission, no coverage is afforded to such party hereby, and such party shall have no right to purchase a **Reporting Endorsement**.

**XIII.   ARBITRATION**

Both the **insureds** and **we** acknowledge that this agreement evidences a transaction involving interstate commerce. Any dispute, claim or controversy arising out of, relating to or in connection with this **policy**, its subject matter or its negotiation, as to the existence, validity, interpretation, performance, non-performance, enforcement, operation, breach of contract, breach of warranty, continuance or termination thereof or any claim alleging fraud, deceit, or suppression of any material fact or breach of fiduciary duty shall be submitted to binding arbitration in accordance with Title 9 U.S.C. § 1 et seq. (The United States Arbitration Act) and the Commercial Arbitration Rules of the American Arbitration Association. Such arbitration proceedings may be initiated by either party by notice in writing to the other and to the American Arbitration Association. Each party to arbitration shall bear its own arbitration costs and expenses. However, in the event any party is required to file a petition or commence any such other proceeding to compel arbitration, the arbitrator may award that party reasonable attorney's fees and costs incurred in having to bring such action. The arbitrator shall have the discretion to order a pre-hearing exchange of information by the parties, including, without limitation, production of requested documents, exchanging of summaries of testimony of proposed witnesses, and examination by deposition of parties. Notwithstanding contrary state law or regulation, the arbitrator shall have the authority to award any remedy or relief allowed under the provisions of the United States Arbitration Act, including, without limitation, specific performance of any obligation created under this **policy**, the awarding of punitive damages, the issuance of an injunction, or the imposition of sanctions for abuse or frustration of the arbitration process. Any arbitration award shall be in writing and shall specify the factual and legal bases of the award. Judgment on the award rendered by the arbitrator shall be final and may be entered in any court having jurisdiction thereof. The provisions hereof shall be a complete defense to any suit, action, or proceeding in any federal, state or local court or before any administrative tribunal with respect to any dispute, claim or controversy arising under this **policy**.

If **we** maintain an office in the state in which the address of the **policyholder** (as specified in the **Coverage Summary**) is located, the arbitration shall proceed in any county in which **we** maintain such office in such state.  If **we** do not maintain an office in the state in which the address of the **policyholder** (as specified in the **Coverage Summary**) is located, the arbitration shall proceed in the county that includes the capital of the state in which the address of the **policyholder** (as specified in the **Coverage Summary**) is located.

**XIV.   GOVERNING LAW**

This **policy** shall be construed, and the legal relations between **us** and the **insureds** (and anyone claiming under the **insureds**) shall be determined, in accordance with the laws of the state in which the address of the **policyholder**, as specified in the **Coverage Summary**, is located, except that the Federal Arbitration Act (Title 9 of the United States Code) shall apply to the rights and obligations of the parties to submit any dispute, claim or controversy arising under this **policy** to arbitration, as provided in Section XIII above.

# EXHIBIT B

# HEALTH CARE PROFESSIONAL LIABILITY POLICY

# DEFINITIONS

As used in this **policy**, the following terms shall have the following meanings:

**Continuous coverage effective date** means the effective date of the earliest **policy** issued by **us** to the **insured**, which **policy** is followed by a continuous and unbroken period in which **we** provided coverage to the **insured**.

**Cover Page** means the Health Care Professional Liability Policy Cover Page, or any renewal or modification thereof.

**Coverage Summary** means the Health Care Professional Liability Policy Coverage Summary, or any renewal or modification thereof.

**Damages** means all amounts of money which are payable under this **policy** because of injury, including death.

**Insured** means any **insured dentist**, any **insured organization**, any **insured physician**, any **insured paramedical employee**, and any **other covered employee**.

**Insured dentist** means any person designated as such in the **Coverage Summary**.

**Insured organization** means any partnership, professional corporation, professional association, limited liability company, or other entity designated as an **Insured Organization** in the **Coverage Summary**.

**Insured paramedical employee** means any person designated as such in the **Coverage Summary**.

**Insured physician** means any person designated as such in the **Coverage Summary**.

**Insured professional** means any **insured dentist** or **insured physician**.

**Other covered employee** means any person whose duties include the prevention, diagnosis and treatment of illness or injury, other than a person practicing as a physician, surgeon, dentist, psychologist, nurse midwife, nurse anesthetist, nurse practitioner, physician's assistant, surgeon's assistant, perfusionist, optometrist, cytotechnologist, emergency medical technician, or anesthesiologist assistant, or any person licensed, certified, or otherwise authorized to deliver advanced level health care in the absence of direct supervision by a licensed physician.

**Other insurance** means any valid and collectible insurance, self insurance, self-insured retention, self-insured trust, or risk transfer instrument of any kind, other than this **policy**, that provides defense or indemnity to any **insured** for any claim, loss, liability, or **damages** covered by this **policy**.

**Peer review services** means service by an **insured professional** while acting within the scope of his or her duties as a member of:

A.    a utilization and quality control peer review organization acting under contract with a federal or state health care agency to review the professional activities of health care providers;

B.    a duly constituted hospital, surgery center or long-term health care facility utilization review committee providing review of services furnished by the institution and members of its medical or dental staff;

C.    a duly constituted hospital, surgery center, or dental center staff committee, consisting solely of members of the medical or dental staff of such hospital, surgery center, or dental center for the evaluation and improvement of quality of care;

D.    a duly constituted hospital peer review committee, consisting solely of members of the medical or dental staff of such hospital, having responsibility for: (1) reviewing qualifications and credentials of persons seeking appointment or reappointment to a hospital medical staff, (2) evaluating the clinical or administrative competence of persons so appointed, (3) matters concerning limiting the scope of hospital privileges of persons on a hospital medical staff, or (4) matters concerning the dismissal or discharge of persons from a hospital medical staff; or

E.    any peer review program conducted by **us**; and

F.    with respect to **insured dentists** only, a duly constituted dental society peer review committee having responsibility for evaluating the performance of services of other dentists or dental auxiliary personnel at the request of government agencies, patients, dentists, providers of dental benefits, or third party insurers.

**Policy** means the **Cover Page**, the forms listed thereon, and any endorsements issued from time to time. The **policy** terms in effect at the time a **professional incident** is first **reported** shall apply to that **professional incident**.

**Policyholder** means the person or entity designated as such in the **Coverage Summary**.

**Policy period** means the period specified as such in the **Coverage Summary**.

**Professional incident** means:

    A.   a single act or omission, or a series of related acts or omissions during a continuing course of **professional services**, arising out of the rendering of, or failure to render, **professional services** to any one person by an **insured** or any person for whose acts or omissions an **insured** is legally responsible, which results, or is likely to result, in **damages;** or

    B.   a single act or omission or a series of related acts or omissions by an **insured physician** or **insured dentist** during the performance of **peer review services** which results, or is likely to result, in **damages**.

For purposes of this definition, treatment of mother and fetus (or fetuses) from conception through postpartum care constitutes a single **professional incident**.

**Professional services** means the provision of medical or dental services, including treatment, making diagnoses and rendering opinions or advice.

**Report, reported,** and **reporting** mean, when used with respect to a **professional incident**, the giving by an **insured** or his or her representative of notice of such **professional incident** either in writing or by telephone to **our** Claims Department specifying (1) the date, time, and place of the **professional incident**, (2) a description of the **professional incident**, (3) the name, address, and age of the patient or claimant, (4) the names of witnesses, including other treating physicians, and (5) the circumstances resulting in the **professional incident**.  .

**Reporting Endorsement** (or "Tail Coverage") means an endorsement issued with respect to an **insured** under Section VI, VII or VIII of the Professional Liability Coverage Part to provide coverage for **professional incidents** first **reported** after the insurance provided by this **policy** terminates as to such **insured**.

**Retroactive date** means the **retroactive date** applicable to each **insured** as specified in the **Coverage Summary**.

**We, our** and **us** refer to the company that issued this **policy** and is designated as "THE COMPANY" on the **Cover Page**.

# PROFESSIONAL LIABILITY COVERAGE PART

I.    **INSURING AGREEMENT**

    **We** agree to pay on behalf of each **insured**, subject to the applicable limit of liability, all sums which such **insured** shall become legally obligated to pay as **damages** because of any **professional incident** which occurs on or after the **retroactive date** applicable to such **insured** and which is first **reported** during the **policy period**; provided, however, that **insured paramedical employees** and **other covered employees** are covered only for **professional incidents** that occur while such persons are employed by an **insured organization** or **insured professional** and acting within the scope of such employment and while engaged in the performance of **professional services** which such persons hold any required license to perform. This insurance applies to **professional incidents** arising out of **professional services** or **peer review services** rendered anywhere in the world, provided that any resulting claim or suit is prosecuted within the United States of America, its possessions or territories.  This insurance does not apply to any claim or suit asserted, filed, pursued, or prosecuted in or pursuant to the authority of any court, tribunal, or other  governmental or legal authority outside the jurisdiction of the United States of America, its possessions and territories.

II.    **INVESTIGATION, DEFENSE AND SETTLEMENT**

    **We** have the right to investigate any **professional incident** that **we** deem expedient.  **We** have the right and duty to defend any suit against an **insured** seeking **damages** which, if awarded, would be covered by this **policy**, even if any of the allegations of the suit are groundless, false or fraudulent, and **we** have the right, but not the duty, to defend any claim against an **insured** seeking such **damages**.  **We** have the right to select defense counsel in any such claim or suit defended by **us**.  **We** will not pay fees and expenses of any legal counsel not retained by **us**.  If a claim or suit is asserted against more than one **insured**, **we** may retain the same legal counsel to defend all **insureds**, consistent with counsel's ethical duties to avoid conflict of interest.

    **We** have the right to settle any claim or suit against an **insured** seeking **damages** which, if awarded, would be covered by this **policy**; provided that no such settlement will be made without the written consent of the **policyholder** unless (a) the **policyholder** cannot be located and contacted after reasonable efforts are made by **us**; or (b) the settlement is made after a verdict or judgment has been rendered against an **insured**.

    **We** shall not be obligated to take an appeal from any judgment against an **insured**.

**We** shall not be obligated to pay **damages** or to defend any suit after the applicable limit of liability has been exhausted.

III.    **EXCLUSIONS**

**We** will not pay **damages** because of any of the following, and **we** will not provide a defense for any suit alleging any of the following:

A.    In the case of any **insured professional**, liability arising out of the rendering of, or failure to render, **professional services** by any person other than such **insured professional** for whose acts or omissions such **insured professional** is liable solely by reason of his or her status as a member, partner, officer, director or shareholder of any partnership, professional corporation, professional association, limited liability company, or other legal entity (other than an **insured organization**);

B.    Liability of an **insured** as an owner, superintendent, administrator, director, trustee, or officer of any hospital, sanitarium, clinic with bed and board facilities, nursing home, ambulatory surgery center, laboratory, health maintenance organization, preferred provider organization, exclusive provider organization or other similar health care entity, or other business enterprise;

C.    Liability assumed by an **insured** under any contract or agreement, whether oral, written or implied, except to the extent that coverage for such liability would be available to such **insured** in the absence of such contract or agreement;

D.    Liability arising out of any willful, wanton, fraudulent, criminal or malicious act or omission;

E.    Liability arising in whole or in part out of sexual activity, or acts in furtherance of sexual activity whether under the guise of **professional services** or not;

F.    Injury to any employee of an **insured** unless arising from the treatment of the employee as a patient of such **insured**;

G.    Any obligation for which an **insured** or any carrier as insurer may be held liable under any workers' compensation, unemployment compensation, disability benefits, or any similar law;

H.    Liability arising out of any act or omission of an **insured** (1) for which such **insured** does not hold any required license to perform, (2) which occurs during any time such **insured's** license to practice his or her profession has been suspended, revoked or voluntarily surrendered, or (3) which constitutes a violation of any restriction imposed upon such license;

I.    Liability arising out of any antitrust violation (except for antitrust violations arising from **peer review services** for which coverage is otherwise afforded), unfair competition, discrimination, or any other act or omission which violates any statute, ordinance or regulation imposing any fine, penalty or other sanction;

J.    Any **professional incident** which has been **reported** to another insurance carrier prior to the **continuous coverage effective date**; any **professional incident** which occurred prior to the **continuous coverage effective date**, if on such date, the **insured** knew or believed, or had reason to know or believe, that such **professional incident** had occurred; or any **professional incident** that occurred during a period in which the **insured** was not covered under a policy of professional liability insurance;

K.    Liability arising out of any claim or investigation instituted by a patient of any **insured** alleging errors or omissions by the **insured** in billing statements for **professional services** rendered to such patient;

L.    Liability arising out of any **professional incident** that occurs while an **insured** is impaired by alcohol or drugs; or

M.    Liability for punitive or exemplary damages (including any multiple of compensatory damages, such as double or treble damages) awarded against an **insured**.

IV.    **LIMITS OF LIABILITY AND DEDUCTIBLES**

The limits of liability specified in the **Coverage Summary** as applicable to each **insured professional** shall apply to all claims or suits made or brought against such **insured professional** (except that claims or suits arising out of the rendering of, or failure to render, **professional services** by any person other than such **insured professional** for whose acts or omissions such **insured professional** may be held liable as a member, partner, officer, director or shareholder of an **insured organization** shall be charged against the limit of liability of the **insured organization**).

The limits of liability specified in the **Coverage Summary** as applicable to each **insured paramedical employee** shall apply to all claims or suits made or brought against such **insured paramedical employee**.

The limits of liability specified in the **Coverage Summary** as applicable to an **insured organization** shall apply to all claims or suits made or brought against (1) the **insured organization**; (2) any **other covered employee**; and (3) any **insured professional**, provided such liability arises out of the rendering of, or failure to render, **professional**

services by any person other than such **insured professional** for whose acts or omissions such **insured professional** is liable solely by reason of his or her status as a member, partner, officer, director or shareholder of the **insured organization**.

The limit of liability specified in the **Coverage Summary** for each **insured** as "each professional incident" is the total of **our** liability to such **insured** resulting from any one **professional incident**. The limit of liability stated in the **Coverage Summary** for each **insured** as "annual aggregate" is the total limit of **our** liability to such **insured** resulting from all **professional incidents** which are first **reported** during the **policy period**.

The limit of liability shall apply regardless of:

A.    the number of persons or entities claiming **damages** covered by this **policy**;

B.    the number of claims or suits brought on account of a **professional incident**;

C.    the number of **insureds** under this **policy**; or

D.    the inclusion of an additional insured.

If Additional Limits of Liability are shown in the **Coverage Summary** for any **insured**, such Additional Limits of Liability shall apply only to (1) **professional incidents** which occur after the Additional Coverage Retroactive Date shown for such **insured** in the **Coverage Summary** and (2) after exhaustion of the Primary Limits of Liability applicable to such **insured**.

**We** shall have the right to allocate **damages** or supplementary payments among claimants, **insureds**, and policies as **we** deem appropriate.

If a **Reporting Endorsement** is issued, **our** liability for all **professional incidents** first **reported** after the effective date of the **Reporting Endorsement** shall be as stated therein.

If a "Deductible" is shown for any **insured** in the **Coverage Summary** as applicable to this Coverage Part, such **insured** shall be liable for each **professional incident reported** in an amount equal to the Deductible shown in the **Coverage Summary,** and **our** limit of liability will be reduced by such amount. In the event **we** pay on behalf of an **insured** all or part of the deductible as **damages**, the **policyholder** shall reimburse **us** for the amount of any such payment within thirty (30) days after written demand.  The **policyholder** agrees to pay all costs incurred by **us**, including attorneys' fees and court costs, incurred by **us** in collecting any reimbursement.

V.    **SUPPLEMENTARY PAYMENTS**

**We** will pay, in addition to the applicable limit of liability:

A.    all expenses incurred by **us**, all costs taxed against an **insured** in any suit defended by **us**, and interest accruing on a judgment or award against an **insured** before **we** have paid, tendered, or deposited in court that part of the judgment which does not exceed the limit of **our** liability thereon, provided that **we** will pay interest only on that portion of the judgment or award that does not exceed the applicable limit of liability; and

B.    premiums on appeal bonds required in any suit defended by **us**, and premiums on bonds to release attachments in any such suit, for an amount not in excess of the applicable limit of liability of this **policy**, but **we** shall have no obligation to apply for or furnish any such bond.

VI.   **REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED ORGANIZATIONS**

In the event of termination of the insurance afforded by this **policy**, either by nonrenewal or cancellation, any **insured organization** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of the endorsement), to have issued a **Reporting Endorsement** providing coverage for **professional incidents** occurring prior to the termination date and otherwise covered by this **policy**, but which are first **reported** after such termination date. Such right must be exercised by such **insured organization** by making payment to **us** not later than thirty (30) days after such termination date.

Notwithstanding the foregoing, if the insurance provided by this **policy** to any **insured organization** which shares limits with one or more **insured professionals** terminates by reason of the dissolution or other termination of activity by such **insured organization**, such **insured organization** shall continue to be covered for **professional incidents** which occur while such **insured organization** is active, even though any such **professional incident** may not be **reported** until after the **insured organization** ceases activity, as long as such **professional incident** is first **reported** within the **policy period** applicable to the insured ,**professionals** with whom the **insured organization** shares limits.

The **Reporting Endorsement** issued to an **insured organization** pursuant to this Section VI shall provide coverage only for such **insured organization** and its **other covered employees**. Such **Reporting Endorsement**

shall not provide coverage to any **insured professional** or **insured paramedical employee**. **Insured professionals** and **insured paramedical employees** must obtain individual **Reporting Endorsements** as provided in Sections VII and VIII below.

**VII.    REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PROFESSIONALS**

If the insurance afforded by this **policy** to an **insured professional** terminates, either by nonrenewal or cancellation, such **insured professional** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of the endorsement), to have issued a policy and a **Reporting Endorsement**, in the form then used by **us**, providing coverage for **professional incidents** occurring prior to the termination date and for which such **insured professional** is otherwise covered by this **policy**, but which are first **reported** after such termination date. Such right must  be exercised by an **insured professional** by making payment to **us** not later than thirty (30) days after such termination date.

Notwithstanding the foregoing, a **Reporting Endorsement** shall be issued in accordance with **our** rules on the effective date of the endorsement to an **insured professional** automatically and without payment of any additional premium in case the termination of insurance results from:

A.   the death of such **insured professional**;

B.   the permanent and total retirement by such **insured professional** from the practice of medicine, but only if such **insured professional** shall have been insured continuously by **us** for the preceding five years. The **insured professional** must submit an affidavit satisfactory to **us** in which the **insured professional** confirms an intention to permanently and totally retire from the practice of medicine and agrees to pay a premium for the **Reporting Endorsement** if such **insured professional** recommences the practice of medicine within five years after delivering such affidavit;

C.   the permanent and total disability of such **insured professional** resulting in the inability to continue the professional activity or endeavor in which such **insured professional** was theretofore engaged, but only if such permanent and total disability:

1.   shall have continued without significant interruption for a term of not less than six months prior to termination; and

2.   shall have required regular treatment by a legally qualified medical or surgical practitioner other than such **insured professional**.

**VIII.   REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PARAMEDICAL EMPLOYEES**

If the insurance afforded by this **policy** to an **insured paramedical employee** terminates, either by nonrenewal or cancellation, such **insured paramedical employee** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of the endorsement), to have issued a policy and a **Reporting Endorsement**, in the form then used by **us** for individual coverage, providing coverage for **professional incidents** occurring prior to the termination date and for which such **insured paramedical employee** is otherwise covered by this **policy**, but which are first **reported** after such termination date. Such right must be exercised by an **insured paramedical employee** by making payment to **us** not later than thirty (30) days after such termination date.

Notwithstanding the foregoing, if the insurance provided by this **policy** to any **insured paramedical employee** who shares limits with one or more **insured professionals** terminates, such **insured paramedical employee** shall continue to be covered for **professional incidents** that occured while such **insured paramedical employee** was employed by the **insured professional** with whom he or she shares limits of liability, even though any such **professional incident** may not be **reported** until after the **insured paramedical employee** is no longer so employed, as long as such **professional incident** is first **reported** within the **policy period** applicable to the **insured professional** with whom the **insured paramedical employee** shares limits.

# GENERAL CONDITIONS

**I.    PREMIUM**

All premiums shall be computed in accordance with **our** rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

**II.    RIGHTS AND DUTIES OF POLICYHOLDER**

Unless named as an **insured** in the **Coverage Summary**, the **policyholder** is not an **insured** and shall have no coverage under this **policy**. However, the **policyholder** shall pay all premiums, receive all return premiums, provide any consents, including consent to settle, as may be required, and receive all notices and invoices under this **policy**. All provisions in the General Conditions which are applicable to the **insureds** shall also apply to the **policyholder**.

III.    **INSPECTION**

**We** shall be permitted but not obligated to inspect any **insured**'s property and operations at any time. Neither **our** right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of any **insured** or others, to determine or warrant that such property or operations are safe, healthful, or in compliance with any law, rule or regulation.

IV.    **INSUREDS' DUTIES**

A.    When an **insured** becomes aware of any claim or suit to which this **policy** applies, or any incident which is likely to result in such a claim or suit, such **insured** or his or her representative must **report** such incident, claim or suit as soon as practicable.

B.    Each **insured** shall cooperate with **us** and, upon **our** request, assist in making settlements, in the conduct of suits, and in enforcing any right of contribution or indemnity against any person or organization who may be liable to such **insured** because of injury with respect to which insurance is afforded under this **policy**, and the **insured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. No **insured** shall make any payment, assume any obligation, accept responsibility or provide information concerning the incident except to **us** or such **insured**'s legal counsel.

C.    If a claim is made or suit is brought against any **insured**, such **insured** shall immediately forward to **us** every demand, notice, summons or other process received by such **insured** or any representative of such **insured**.

D.    No **insured** shall alter, destroy, or dispose of patient records or otherwise misrepresent or conceal facts pertinent to any incident, claim or suit.

E.    Each **insured** shall notify **us** in writing, within thirty (30) days after the occurrence of any one or more of the following:

1.    Such **insured** undergoes treatment, or is advised by a physician, peer review committee, hospital credentialling committee or licensing agency to undergo treatment for alcohol, drug or other substance abuse, or for psychiatric illness;

2.    Such **insured** suffers an illness or physical defect which impairs, or is likely to impair, such **insured's** ability to practice for a period of thirty (30) days or more;

3.    Such **insured** is convicted of, or pleads guilty or no contest to, any felony or misdemeanor other than minor traffic offenses;

4.    Such **insured's** license to practice medicine or dentistry, or to dispense medicine, or otherwise to deliver health care services of any type, is revoked, suspended, surrendered or limited in any respect, or such **insured** is called to appear before any licensing agency, peer review committee, professional standards review committee or credentialling committee in a proceeding seeking to terminate, revoke or limit such **insured's** employment or privilege to practice; or

5.    Such **insured's** privilege to practice is terminated, revoked or limited by the **policyholder**, any hospital or other employer, whether by reason of termination of employment or otherwise.

If any **insured** fails to comply with any obligations under this **policy**, **our** obligations to such **insured** under this **policy** shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

V.    **CLAIMS AGAINST US**

No claim shall lie against **us** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this **policy**, nor until the amount of any **insured**'s obligation to pay shall have been finally determined either by judgment against an **insured** after actual trial or by written agreement of such **insured**, the claimant, and **us**. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this **policy** to the extent of the insurance afforded by this **policy**. No person or organization shall have any right under this **policy** to join **us** as a party to any action against an **insured** to determine the **insured**'s liability, nor shall **we** be impleaded by an **insured** or any legal representative.

**Our** liability in any cause of action based on allegations that **we** did not fulfill **our** obligations to any **insured** in good faith shall not exceed the value of the **insured**'s assets that are legally subject to attachment and levy by a

judgment creditor after payment of all sums available through this **policy**. For purposes of this limitation, the "value of the **insured's** assets" shall be determined as of the date of the judgment rendered against the **insured** and shall not include the subject cause of action against **us**.

Bankruptcy or insolvency of any **insured** or any **insured's** estate shall not relieve **us** of any of **our** obligations hereunder.

Any claim against **us**, including without limitation any cause of action that relates to or arises in connection with this **policy**, or that is based on allegations that **we** did not fulfill **our** obligations to any **insured** in good faith, shall be brought in arbitration pursuant to Section XIII below.

## VI.    OTHER INSURANCE

A.    With respect to loss arising from **peer review services** (other than **peer review services** performed on **our** behalf), the insurance provided by this **policy** is excess over any **other insurance**.

B.    Insurance provided to any **insured** by "Additional Limits of Liability," as specified in the **Coverage Summary**, shall apply only after exhaustion of the "Primary Limits of Liability" specified in the **Coverage Summary** for such **insured**. Insurance provided by Additional Limits of Liability shall be in excess of, and shall not contribute with, any **other insurance**. If Additional Limits of Liability are provided, **we** shall, after the Primary Limits of Liability have been exhausted, have no duty to defend any suit that any other insurer has a duty to defend.

C.    Except as provided in A or B, and any endorsement forming a part of this **policy**, this insurance is primary.

D.    When both this insurance and **other insurance** apply to loss on the same basis, whether primary, excess or contingent, **we** shall not be liable under this **policy** for a greater proportion of the loss than that stated in the applicable contribution provision below:

1.    If all of such **other insurance** provides for contribution by equal shares, **we** shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of loss is paid, and with respect to any amount of loss not so paid, the remaining insurers then continue to contribute in equal shares of the remaining amount of the loss until each insurer has paid its limit in full or the full amount of the loss is paid.

2.    If any such **other insurance** does not provide for contribution by equal shares, **we** shall not be liable for a greater proportion of such loss than the applicable limit of liability under this **policy** for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

## VII.    SUBROGATION

In the event of any payment under this **policy**, **we** shall be subrogated to any **insured's** rights of recovery therefor against any person or organization, and any such **insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. No **insured** shall do anything to prejudice such rights.

## VIII.    ASSIGNMENT

No **insured** may assign any interest in this **policy**. If, however, any **insured** shall die, such insurance as afforded by this **policy** shall apply to such **insured's** legal representative, as an **insured**, but only while acting within the scope of the representative's duties as such. No **insured** shall assign any cause of action against **us** that relates to or arises in connection with this **policy**, or that is based on allegations that **we** did not fulfill **our** obligations to any **insured** in good faith.

## IX.    CHANGES

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or change in any part of this **policy** or estop **us** from asserting any right under the terms of this **policy**; nor shall the terms of this **policy** be waived or changed, except by endorsement issued to form a part of this **policy**.

## X.    CANCELLATION

This **policy**, or coverage of any **insured** thereunder, may be canceled by the **policyholder** by mailing to **us** written notice stating when thereafter the cancellation shall be effective. This **policy**, or coverage of any **insured** thereunder, may be canceled by **us** by mailing to the **policyholder**, at the address shown in the **Coverage Summary**, written notice stating when such cancellation shall be effective, in accordance with applicable state law. The effective date and hour of cancellation stated in the notice shall become the end of the **policy period** for each **insured** to which such cancellation applies. Delivery of such written notice either by the **policyholder** or by **us** shall be equivalent to mailing. If the **policyholder** cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If **we** cancel, earned premium shall be computed pro rata. Premium

adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

## XI.    RENEWAL OF POLICY

Neither the **policyholder** nor **we** have any obligation to renew this **policy**. Any renewal will be on the policy forms and endorsements then in effect. If **we** elect not to renew this **policy**, or coverage of any **insured** thereunder, notice of nonrenewal shall be given in accordance with applicable state law.

## XII.   FRAUD AND MISREPRESENTATIONS

By acceptance of this **policy**, all **insureds** agree that the statements in the **Coverage Summary** and in their respective applications or renewal applications for insurance are their agreements and representations, that this **policy** is issued in reliance upon the truth of such representations, and that this **policy** embodies all agreements existing between themselves and **us** or any of **our** agents relating to this insurance. In the event of any fraud, material misrepresentation or omission by any **insured** in any application or renewal application for insurance, this **policy** is void as to the party committing such fraud, material misrepresentation or omission, no coverage is afforded to such party hereby, and such party shall have no right to purchase a **Reporting Endorsement**.

## XIII.  ARBITRATION

Both the **insureds** and **we** acknowledge that this agreement evidences a transaction involving interstate commerce. Any dispute, claim or controversy arising out of, relating to or in connection with this **policy**, its subject matter or its negotiation, as to the existence, validity, interpretation, performance, non-performance, enforcement, operation, breach of contract, breach of warranty, continuance or termination thereof or any claim alleging fraud, deceit, or suppression of any material fact or breach of fiduciary duty shall be submitted to binding arbitration in accordance with Title 9 U.S.C. § 1 et seq. (The United States Arbitration Act) and the Commercial Arbitration Rules of the American Arbitration Association. Such arbitration proceedings may be initiated by either party by notice in writing to the other and to the American Arbitration Association. Each party to arbitration shall bear its own arbitration costs and expenses. However, in the event any party is required to file a petition or commence any such other proceeding to compel arbitration, the arbitrator may award that party reasonable attorney's fees and costs incurred in having to bring such action. The arbitrator shall have the discretion to order a pre-hearing exchange of information by the parties, including, without limitation, production of requested documents, exchanging of summaries of testimony of proposed witnesses, and examination by deposition of parties. Notwithstanding contrary state law or regulation, the arbitrator shall have the authority to award any remedy or relief allowed under the provisions of the United States Arbitration Act, including, without limitation, specific performance of any obligation created under this **policy**, the awarding of punitive damages, the issuance of an injunction, or the imposition of sanctions for abuse or frustration of the arbitration process. Any arbitration award shall be in writing and shall specify the factual and legal bases of the award. Judgment on the award rendered by the arbitrator shall be final and may be entered in any court having jurisdiction thereof. The provisions hereof shall be a complete defense to any suit, action, or proceeding in any federal, state or local court or before any administrative tribunal with respect to any dispute, claim or controversy arising under this **policy**.

If **we** maintain an office in the state in which the address of the **policyholder** (as specified in the **Coverage Summary**) is located, the arbitration shall proceed in any county in which **we** maintain such office in such state. If **we** do not maintain an office in the state in which the address of the **policyholder** (as specified in the **Coverage Summary**) is located, the arbitration shall proceed in the county that includes the capital of the state in which the address of the **policyholder** (as specified in the **Coverage Summary**) is located.

## XIV.   GOVERNING LAW

This **policy** shall be construed, and the legal relations between **us** and the **insureds** (and anyone claiming under the **insureds**) shall be determined, in accordance with the laws of the state in which the address of the **policyholder**, as specified in the **Coverage Summary**, is located, except that the Federal Arbitration Act (Title 9 of the United States Code) shall apply to the rights and obligations of the parties to submit any dispute, claim or controversy arising under this **policy** to arbitration, as provided in Section XIII above.

# EXHIBIT C

# HEALTH CARE PROFESSIONAL LIABILITY POLICY

# DEFINITIONS

As used in this **policy**, the following terms shall have the following meanings:

**Continuous coverage effective date** means the effective date of the earliest **policy** issued by **us** to the **insured**, which **policy** is followed by a continuous and unbroken period in which **we** provided coverage to the **insured**.

**Cover Page** means the Health Care Professional Liability Policy Cover Page, or any renewal or modification thereof.

**Coverage Summary** means the Health Care Professional Liability Policy Coverage Summary, or any renewal or modification thereof.

**Damages** means all amounts of money which are payable under this **policy** because of injury, including death.

**Insured** means any **insured dentist**, any **insured organization**, any **insured physician**, any **insured paramedical employee**, and any **other covered employee**.

**Insured dentist** means any person designated as such in the **Coverage Summary**.

**Insured organization** means any partnership, professional corporation, professional association, limited liability company, or other entity designated as an **Insured Organization** in the **Coverage Summary**.

**Insured paramedical employee** means any person designated as such in the **Coverage Summary**.

**Insured physician** means any person designated as such in the **Coverage Summary**.

**Insured professional** means any **insured dentist** or **insured physician**.

**Other covered employee** means any person whose duties include the prevention, diagnosis and treatment of illness or injury, other than a person practicing as a physician, surgeon, dentist, psychologist, nurse midwife, nurse anesthetist, nurse practitioner, physician's assistant, surgeon's assistant, perfusionist, optometrist, cytotechnologist, emergency medical technician, or anesthesiologist assistant, or any person licensed, certified, or otherwise authorized to deliver advanced level health care in the absence of direct supervision by a licensed physician.

**Other insurance** means any valid and collectible insurance, self insurance, self-insured retention, self-insured trust, or risk transfer instrument of any kind, other than this **policy**, that provides defense or indemnity to any **insured** for any claim, loss, liability, or **damages** covered by this **policy**.

**Peer review services** means service by an **insured professional** while acting within the scope of his or her duties as a member of:

    A.    a utilization and quality control peer review organization acting under contract with a federal or state health care agency to review the professional activities of health care providers;

    B.    a duly constituted hospital, surgery center or long-term health care facility utilization review committee providing review of services furnished by the institution and members of its medical or dental staff;

    C.    a duly constituted hospital, surgery center, or dental center staff committee, consisting solely of members of the medical or dental staff of such hospital, surgery center, or dental center for the evaluation and improvement of quality of care;

    D.    a duly constituted hospital peer review committee, consisting solely of members of the medical or dental staff of such hospital, having responsibility for: (1) reviewing qualifications and credentials of persons seeking appointment or reappointment to a hospital medical staff, (2) evaluating the clinical or administrative competence of persons so appointed, (3) matters concerning limiting the scope of hospital privileges of persons on a hospital medical staff, or (4) matters concerning the dismissal or discharge of persons from a hospital medical staff; or

    E.    any peer review program conducted by **us**; and

    F.    with respect to **insured dentists** only, a duly constituted dental society peer review committee having responsibility for evaluating the performance of services of other dentists or dental auxiliary personnel at the request of government agencies, patients, dentists, providers of dental benefits, or third party insurers.

**Policy** means the **Cover Page**, the forms listed thereon, and any endorsements issued from time to time. The **policy** terms in effect at the time a **professional incident** is first **reported** shall apply to that **professional incident**.

**Policyholder** means the person or entity designated as such in the **Coverage Summary**.

**Policy period** means the period specified as such in the **Coverage Summary**.

**Professional incident** means:

- A. a single act or omission, or a series of related acts or omissions during a continuing course of **professional services**, arising out of the rendering of, or failure to render, **professional services** to any one person by an **insured** or any person for whose acts or omissions an **insured** is legally responsible, which results, or is likely to result, in **damages;** or

- B. a single act or omission or a series of related acts or omissions by an **insured physician** or **insured dentist** during the performance of **peer review services** which results, or is likely to result, in **damages**.

For purposes of this definition, treatment of mother and fetus (or fetuses) from conception through postpartum care constitutes a single **professional incident**.

**Professional services** means the provision of medical or dental services, including treatment, making diagnoses and rendering opinions or advice.

**Report, reported,** and **reporting** mean, when used with respect to a **professional incident**, the giving by an **insured** or his or her representative of notice of such **professional incident** either in writing or by telephone to **our** Claims Department specifying (1) the date, time, and place of the **professional incident**, (2) a description of the **professional incident**, (3) the name, address, and age of the patient or claimant, (4) the names of witnesses, including other treating physicians, and (5) the circumstances resulting in the **professional incident**.

**Reporting Endorsement** (or "Tail Coverage") means an endorsement issued with respect to an **insured** under Section VI, VII or VIII of the Professional Liability Coverage Part to provide coverage for **professional incidents** first **reported** after the insurance provided by this **policy** terminates as to such **insured**.

**Retroactive date** means the **retroactive date** applicable to each **insured** as specified in the **Coverage Summary**.

**We, our** and **us** refer to the company that issued this **policy** and is designated as "THE COMPANY" on the **Cover Page**.

# PROFESSIONAL LIABILITY COVERAGE PART

I.    **INSURING AGREEMENT**

**We** agree to pay on behalf of each **insured**, subject to the applicable limit of liability, all sums which such **insured** shall become legally obligated to pay as **damages** because of any **professional incident** which occurs on or after the **retroactive date** applicable to such **insured** and which is first **reported** during the **policy period**; provided, however, that **insured paramedical employees** and **other covered employees** are covered only for **professional incidents** that occur while such persons are employed by an **insured organization** or **insured professional** and acting within the scope of such employment and while engaged in the performance of **professional services** which such persons hold any required license to perform. This insurance applies to **professional incidents** arising out of **professional services** or **peer review services** rendered anywhere in the world, provided that any resulting claim or suit is prosecuted within the United States of America, its possessions or territories. This insurance does not apply to any claim or suit asserted, filed, pursued, or prosecuted in or pursuant to the authority of any court, tribunal, or other governmental or legal authority outside the jurisdiction of the United States of America, its possessions and territories.

II.    **INVESTIGATION, DEFENSE AND SETTLEMENT**

**We** have the right to investigate any **professional incident** that **we** deem expedient. **We** have the right and duty to defend any suit against an **insured** seeking **damages** which, if awarded, would be covered by this **policy**, even if any of the allegations of the suit are groundless, false or fraudulent, and **we** have the right, but not the duty, to defend any claim against an **insured** seeking such **damages**. **We** have the right to select defense counsel in any such claim or suit defended by **us**. **We** will not pay fees and expenses of any legal counsel not retained by **us**. If a claim or suit is asserted against more than one **insured**, **we** may retain the same legal counsel to defend all **insureds**, consistent with counsel's ethical duties to avoid conflict of interest.

**We** have the right to settle any claim or suit against an **insured** seeking **damages** which, if awarded, would be covered by this **policy**; provided that no such settlement will be made without the written consent of the **policyholder** unless (a) the **policyholder** cannot be located and contacted after reasonable efforts are made by **us**; or (b) the settlement is made after a verdict or judgment has been rendered against an **insured**.

**We** shall not be obligated to take an appeal from any judgment against an **insured**.

**We** shall not be obligated to pay **damages** or to defend any suit after the applicable limit of liability has been exhausted.

III.  **EXCLUSIONS**

**We** will not pay **damages** because of any of the following, and **we** will not provide a defense for any suit alleging any of the following:

A.  In the case of any **insured professional**, liability arising out of the rendering of, or failure to render, **professional services** by any person other than such **insured professional** for whose acts or omissions such **insured professional** is liable solely by reason of his or her status as a member, partner, officer, director or shareholder of any partnership, professional corporation, professional association, limited liability company, or other legal entity (other than an **insured organization**);

B.  Liability of an **insured** as an owner, superintendent, administrator, director, trustee, or officer of any hospital, sanitarium, clinic with bed and board facilities, nursing home, ambulatory surgery center, laboratory, health maintenance organization, preferred provider organization, exclusive provider organization or other similar health care entity, or other business enterprise;

C.  Liability assumed by an **insured** under any contract or agreement, whether oral, written or implied, except to the extent that coverage for such liability would be available to such **insured** in the absence of such contract or agreement;

D.  Liability arising out of any willful, wanton, fraudulent, criminal or malicious act or omission;

E.  Liability arising in whole or in part out of sexual activity, or acts in furtherance of sexual activity whether under the guise of **professional services** or not;

F.  Injury to any employee of an **insured** unless arising from the treatment of the employee as a patient of such **insured**;

G.  Any obligation for which an **insured** or any carrier as insurer may be held liable under any workers' compensation, unemployment compensation, disability benefits, or any similar law;

H.  Liability arising out of any act or omission of an **insured** (1) for which such **insured** does not hold any required license to perform, (2) which occurs during any time such **insured's** license to practice his or her profession has been suspended, revoked or voluntarily surrendered, or (3) which constitutes a violation of any restriction imposed upon such license;

I.  Liability arising out of any antitrust violation (except for antitrust violations arising from **peer review services** for which coverage is otherwise afforded), unfair competition, discrimination, or any other act or omission which violates any statute, ordinance or regulation imposing any fine, penalty or other sanction;

J.  Any **professional incident** which has been **reported** to another insurance carrier prior to the **continuous coverage effective date**; any **professional incident** which occurred prior to the **continuous coverage effective date**, if on such date, the **insured** knew or believed, or had reason to know or believe, that such **professional incident** had occurred; or any **professional incident** that occurred during a period in which the **insured** was not covered under a policy of professional liability insurance;

K.  Liability arising out of any claim or investigation instituted by a patient of any **insured** alleging errors or omissions by the **insured** in billing statements for **professional services** rendered to such patient;

L.  Liability arising out of any **professional incident** that occurs while an **insured** is impaired by alcohol or drugs; or

M.  Liability for punitive or exemplary damages (including any multiple of compensatory damages, such as double or treble damages) awarded against an **insured**.

IV.  **LIMITS OF LIABILITY AND DEDUCTIBLES**

The limits of liability specified in the **Coverage Summary** as applicable to each **insured professional** shall apply to all claims or suits made or brought against such **insured professional** (except that claims or suits arising out of the rendering of, or failure to render, **professional services** by any person other than such **insured professional** for whose acts or omissions such **insured professional** may be held liable as a member, partner, officer, director or shareholder of an **insured organization** shall be charged against the limit of liability of the **insured organization**).

The limits of liability specified in the **Coverage Summary** as applicable to each **insured paramedical employee** shall apply to all claims or suits made or brought against such **insured paramedical employee**.

The limits of liability specified in the **Coverage Summary** as applicable to an **insured organization** shall apply to all claims or suits made or brought against (1) the **insured organization**; (2) any **other covered employee**; and (3) any **insured professional**, provided such liability arises out of the rendering of, or failure to render, **professional services** by any person other than such **insured professional** for whose acts or omissions such **insured professional** is liable solely by reason of his or her status as a member, partner, officer, director or shareholder of the **insured organization**.

The limit of liability specified in the **Coverage Summary** for each **insured** as "each professional incident" is the total of **our** liability to such **insured** resulting from any one **professional incident**. The limit of liability stated in the **Coverage Summary** for each **insured** as "annual aggregate" is the total limit of **our** liability to such **insured** resulting from all **professional incidents** which are first **reported** during the **policy period**.

The limit of liability shall apply regardless of:

A.    the number of persons or entities claiming **damages** covered by this **policy**;

B.    the number of claims or suits brought on account of a **professional incident**;

C.    the number of **insureds** under this **policy**; or

D.    the inclusion of an additional insured.

If Additional Limits of Liability are shown in the **Coverage Summary** for any **insured**, such Additional Limits of Liability shall apply only to (1) **professional incidents** which occur after the Additional Coverage Retroactive Date shown for such **insured** in the **Coverage Summary** and (2) after exhaustion of the Primary Limits of Liability applicable to such **insured**.

**We** shall have the right to allocate **damages** or supplementary payments among claimants, **insureds**, and policies as **we** deem appropriate.

If a **Reporting Endorsement** is issued, **our** liability for all **professional incidents** first **reported** after the effective date of the **Reporting Endorsement** shall be as stated therein.

If a "Deductible" is shown for any **insured** in the **Coverage Summary** as applicable to this Coverage Part, such **insured** shall be liable for each **professional incident reported** in an amount equal to the Deductible shown in the **Coverage Summary,** and **our** limit of liability will be reduced by such amount. In the event **we** pay on behalf of an **insured** all or part of the deductible as **damages**, the **policyholder** shall reimburse **us** for the amount of any such payment within thirty (30) days after written demand. The **policyholder** agrees to pay all costs incurred by **us**, including attorneys' fees and court costs, incurred by **us** in collecting any reimbursement.

V.    **SUPPLEMENTARY PAYMENTS**

**We** will pay, in addition to the applicable limit of liability:

A.    all expenses incurred by **us**, all costs taxed against an **insured** in any suit defended by **us**, and interest accruing on a judgment or award against an **insured** before **we** have paid, tendered, or deposited in court that part of the judgment which does not exceed the limit of **our** liability thereon, provided that **we** will pay interest only on that portion of the judgment or award that does not exceed the applicable limit of liability; and

B.    premiums on appeal bonds required in any suit defended by **us**, and premiums on bonds to release attachments in any such suit, for an amount not in excess of the applicable limit of liability of this **policy**, but **we** shall have no obligation to apply for or furnish any such bond.

VI.   **REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED ORGANIZATIONS**

In the event of termination of the insurance afforded by this **policy**, either by nonrenewal or cancellation, any **insured organization** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of the endorsement), to have issued a **Reporting Endorsement** providing coverage for **professional incidents** occurring prior to the termination date and otherwise covered by this **policy**, but which are first **reported** after such termination date. Such right must be exercised by such **insured organization** by making payment to **us** not later than thirty (30) days after such termination date.

Notwithstanding the foregoing, if the insurance provided by this **policy** to any **insured organization** which shares limits with one or more **insured professionals** terminates by reason of the dissolution or other termination of activity by such **insured organization**, such **insured organization** shall continue to be covered for **professional incidents** which occur while such **insured organization** is active, even though any such **professional incident** may not be **reported** until after the **insured organization** ceases activity, as long as such **professional incident** is first **reported** within the **policy period** applicable to the **insured professionals** with whom the **insured organization** shares limits.

The **Reporting Endorsement** issued to an **insured organization** pursuant to this Section VI shall provide coverage only for such **insured organization** and its **other covered employees**. Such **Reporting Endorsement** shall not provide coverage to any **insured professional** or **insured paramedical employee. Insured professionals** and **insured paramedical employees** must obtain individual **Reporting Endorsements** as provided in Sections VII and VIII below.

VII.  **REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PROFESSIONALS**

If the insurance afforded by this **policy** to an **insured professional** terminates, either by nonrenewal or cancellation, such **insured professional** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of the endorsement), to have issued a policy and a **Reporting Endorsement**, in the form then used by **us**, providing coverage for **professional incidents** occurring prior to the termination date and for which such **insured professional** is otherwise covered by this **policy**, but which are first **reported** after such termination date. Such right must be exercised by an **insured professional** by making payment to **us** not later than thirty (30) days after such termination date.

Notwithstanding the foregoing, a **Reporting Endorsement** shall be issued in accordance with **our** rules on the effective date of the endorsement to an **insured professional** automatically and without payment of any additional premium in case the termination of insurance results from:

A.  the death of such **insured professional**;

B.  the permanent and total retirement by such **insured professional** from the practice of medicine, but only if such **insured professional** shall have been insured continuously by **us** for the preceding five years. The **insured professional** must submit an affidavit satisfactory to **us** in which the **insured professional** confirms an intention to permanently and totally retire from the practice of medicine and agrees to pay a premium for the **Reporting Endorsement** if such **insured professional** recommences the practice of medicine within five years after delivering such affidavit;

C.  the permanent and total disability of such **insured professional** resulting in the inability to continue the professional activity or endeavor in which such **insured professional** was theretofore engaged, but only if such permanent and total disability:

   1.  shall have continued without significant interruption for a term of not less than six months prior to termination; and

   2.  shall have required regular treatment by a legally qualified medical or surgical practitioner other than such **insured professional**.

**VIII.  REPORTING ENDORSEMENT PROVISION APPLICABLE TO INSURED PARAMEDICAL EMPLOYEES**

If the insurance afforded by this **policy** to an **insured paramedical employee** terminates, either by nonrenewal or cancellation, such **insured paramedical employee** shall have the right, upon the payment of an additional premium (to be computed in accordance with **our** rules, rates, rating plan and premiums applicable on the effective date of the endorsement), to have issued a policy and a **Reporting Endorsement**, in the form then used by **us** for individual coverage, providing coverage for **professional incidents** occurring prior to the termination date and for which such **insured paramedical employee** is otherwise covered by this **policy**, but which are first **reported** after such termination date. Such right must be exercised by an **insured paramedical employee** by making payment to **us** not later than thirty (30) days after such termination date.

Notwithstanding the foregoing, if the insurance provided by this **policy** to any **insured paramedical employee** who shares limits with one or more **insured professionals** terminates, such **insured paramedical employee** shall continue to be covered for **professional incidents** that occured while such **insured paramedical employee** was employed by the **insured professional** with whom he or she shares limits of liability, even though any such **professional incident** may not be **reported** until after the **insured paramedical employee** is no longer so employed, as long as such **professional incident** is first **reported** within the **policy period** applicable to the **insured professional** with whom the **insured paramedical employee** shares limits.

# GENERAL CONDITIONS

**I.    PREMIUM**

All premiums shall be computed in accordance with **our** rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

**II.   RIGHTS AND DUTIES OF POLICYHOLDER**

Unless named as an **insured** in the **Coverage Summary**, the **policyholder** is not an **insured** and shall have no coverage under this **policy**. However, the **policyholder** shall pay all premiums, receive all return premiums, provide any consents, including consent to settle, as may be required, and receive all notices and invoices under this **policy**. All provisions in the General Conditions which are applicable to the **insureds** shall also apply to the **policyholder**.

III.  **INSPECTION**

**We** shall be permitted but not obligated to inspect any **insured**'s property and operations at any time. Neither **our** right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of any **insured** or others, to determine or warrant that such property or operations are safe, healthful, or in compliance with any law, rule or regulation.

IV.  **INSUREDS' DUTIES**

A.  When an **insured** becomes aware of any claim or suit to which this **policy** applies, or any incident which is likely to result in such a claim or suit, such **insured** or his or her representative must **report** such incident, claim or suit as soon as practicable.

B.  Each **insured** shall cooperate with **us** and, upon **our** request, assist in making settlements, in the conduct of suits, and in enforcing any right of contribution or indemnity against any person or organization who may be liable to such **insured** because of injury with respect to which insurance is afforded under this **policy**, and the **insured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. No **insured** shall make any payment, assume any obligation, accept responsibility or provide information concerning the incident except to **us** or such **insured**'s legal counsel.

C.  If a claim is made or suit is brought against any **insured**, such **insured** shall immediately forward to **us** every demand, notice, summons or other process received by such **insured** or any representative of such **insured**.

D.  No **insured** shall alter, destroy, or dispose of patient records or otherwise misrepresent or conceal facts pertinent to any incident, claim or suit.

E.  Each **insured** shall notify **us** in writing, within thirty (30) days after the occurrence of any one or more of the following:

  1.  Such **insured** undergoes treatment, or is advised by a physician, peer review committee, hospital credentialing committee or licensing agency to undergo treatment for alcohol, drug or other substance abuse, or for psychiatric illness;

  2.  Such **insured** suffers an illness or physical defect which impairs, or is likely to impair, such **insured's** ability to practice for a period of thirty (30) days or more;

  3.  Such **insured** is convicted of, or pleads guilty or no contest to, any felony or misdemeanor other than minor traffic offenses;

  4.  Such **insured's** license to practice medicine or dentistry, or to dispense medicine, or otherwise to deliver health care services of any type, is revoked, suspended, surrendered or limited in any respect, or such **insured** is called to appear before any licensing agency, peer review committee, professional standards review committee or credentialing committee in a proceeding seeking to terminate, revoke or limit such **insured's** employment or privilege to practice; or

  5.  Such **insured's** privilege to practice is terminated, revoked or limited by the **policyholder**, any hospital or other employer, whether by reason of termination of employment or otherwise.

If any **insured** fails to comply with any obligations under this **policy**, **our** obligations to such **insured** under this **policy** shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

V.  **CLAIMS AGAINST US**

No claim shall lie against **us** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this **policy**, nor until the amount of any **insured**'s obligation to pay shall have been finally determined either by judgment against an **insured** after actual trial or by written agreement of such **insured**, the claimant, and **us**. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this **policy** to the extent of the insurance afforded by this **policy**. No person or organization shall have any right under this **policy** to join **us** as a party to any action against an **insured** to determine the **insured**'s liability, nor shall **we** be impleaded by an **insured** or any legal representative.

**Our** liability in any cause of action based on allegations that **we** did not fulfill **our** obligations to any **insured** in good faith shall not exceed the value of the **insured's** assets that are legally subject to attachment and levy by a judgment creditor after payment of all sums available through this **policy**. For purposes of this limitation, the "value of the **insured's** assets" shall be determined as of the date of the judgment rendered against the **insured** and shall not include the subject cause of action against **us**.

Bankruptcy or insolvency of any **insured** or any **insured's** estate shall not relieve **us** of any of **our** obligations hereunder.

Any claim against **us**, including without limitation any cause of action that relates to or arises in connection with this **policy**, or that is based on allegations that **we** did not fulfill **our** obligations to any **insured** in good faith, shall be brought in arbitration pursuant to Section XIII below.

VI.   **OTHER INSURANCE**

A.   With respect to loss arising from **peer review services** (other than **peer review services** performed on **our** behalf), the insurance provided by this **policy** is excess over any **other insurance**.

B.   Insurance provided to any **insured** by "Additional Limits of Liability," as specified in the **Coverage Summary**, shall apply only after exhaustion of the "Primary Limits of Liability" specified in the **Coverage Summary** for such **insured**. Insurance provided by Additional Limits of Liability shall be in excess of, and shall not contribute with, any **other insurance**. If Additional Limits of Liability are provided, **we** shall, after the Primary Limits of Liability have been exhausted, have no duty to defend any suit that any other insurer has a duty to defend.

C.   Except as provided in A or B, and any endorsement forming a part of this **policy**, this insurance is primary.

D.   When both this insurance and **other insurance** apply to loss on the same basis, whether primary, excess or contingent, **we** shall not be liable under this **policy** for a greater proportion of the loss than that stated in the applicable contribution provision below:

1.   If all of such **other insurance** provides for contribution by equal shares, **we** shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of loss is paid, and with respect to any amount of loss not so paid, the remaining insurers then continue to contribute in equal shares of the remaining amount of the loss until each insurer has paid its limit in full or the full amount of the loss is paid.

2.   If any such **other insurance** does not provide for contribution by equal shares, **we** shall not be liable for a greater proportion of such loss than the applicable limit of liability under this **policy** for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

VII.   **SUBROGATION**

In the event of any payment under this **policy**, **we** shall be subrogated to any **insured**'s rights of recovery therefor against any person or organization, and any such **insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. No **insured** shall do anything to prejudice such rights.

VIII.   **ASSIGNMENT**

No **insured** may assign any interest in this **policy**. If, however, any **insured** shall die, such insurance as afforded by this **policy** shall apply to such **insured**'s legal representative, as an **insured**, but only while acting within the scope of the representative's duties as such.   No **insured** shall assign any cause of action against **us** that relates to or arises in connection with this **policy**, or that is based on allegations that **we** did not fulfill **our** obligations to any **insured** in good faith.

IX.   **CHANGES**

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or change in any part of this **policy** or estop **us** from asserting any right under the terms of this **policy**; nor shall the terms of this **policy** be waived or changed, except by endorsement issued to form a part of this **policy**.

X.   **CANCELLATION**

This **policy**, or coverage of any **insured** thereunder, may be canceled by the **policyholder** by mailing to **us** written notice stating when thereafter the cancellation shall be effective. This **policy**, or coverage of any **insured** thereunder, may be canceled by **us** by mailing to the **policyholder**, at the address shown in the **Coverage Summary**, written notice stating when such cancellation shall be effective, in accordance with applicable state law. The effective date and hour of cancellation stated in the notice shall become the end of the **policy period** for each **insured** to which such cancellation applies. Delivery of such written notice either by the **policyholder** or by **us** shall be equivalent to mailing. If the **policyholder** cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If **we** cancel, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

XI.   **RENEWAL OF POLICY**

Neither the **policyholder** nor **we** have any obligation to renew this **policy**. Any renewal will be on the policy forms and endorsements then in effect. If **we** elect not to renew this **policy**, or coverage of any **insured** thereunder, notice of nonrenewal shall be given in accordance with applicable state law.

XII.  **FRAUD AND MISREPRESENTATIONS**

By acceptance of this **policy**, all **insureds** agree that the statements in the **Coverage Summary** and in their respective applications or renewal applications for insurance are their agreements and representations, that this **policy** is issued in reliance upon the truth of such representations, and that this **policy** embodies all agreements existing between themselves and **us** or any of **our** agents relating to this insurance. In the event of any fraud, material misrepresentation or omission by any **insured** in any application or renewal application for insurance, this **policy** is void as to the party committing such fraud, material misrepresentation or omission, no coverage is afforded to such party hereby, and such party shall have no right to purchase a **Reporting Endorsement**.

XIII.  **ARBITRATION**

Both the **insureds** and **we** acknowledge that this agreement evidences a transaction involving interstate commerce. Any dispute, claim or controversy arising out of, relating to or in connection with this **policy**, its subject matter or its negotiation, as to the existence, validity, interpretation, performance, non-performance, enforcement, operation, breach of contract, breach of warranty, continuance or termination thereof or any claim alleging fraud, deceit, or suppression of any material fact or breach of fiduciary duty shall be submitted to binding arbitration in accordance with Title 9 U.S.C. § 1 et seq. (The United States Arbitration Act) and the Commercial Arbitration Rules of the American Arbitration Association. Such arbitration proceedings may be initiated by either party by notice in writing to the other and to the American Arbitration Association. Each party to arbitration shall bear its own arbitration costs and expenses. However, in the event any party is required to file a petition or commence any such other proceeding to compel arbitration, the arbitrator may award that party reasonable attorney's fees and costs incurred in having to bring such action. The arbitrator shall have the discretion to order a pre-hearing exchange of information by the parties, including, without limitation, production of requested documents, exchanging of summaries of testimony of proposed witnesses, and examination by deposition of parties. Notwithstanding contrary state law or regulation, the arbitrator shall have the authority to award any remedy or relief allowed under the provisions of the United States Arbitration Act, including, without limitation, specific performance of any obligation created under this **policy**, the awarding of punitive damages, the issuance of an injunction, or the imposition of sanctions for abuse or frustration of the arbitration process. Any arbitration award shall be in writing and shall specify the factual and legal bases of the award. Judgment on the award rendered by the arbitrator shall be final and may be entered in any court having jurisdiction thereof. The provisions hereof shall be a complete defense to any suit, action, or proceeding in any federal, state or local court or before any administrative tribunal with respect to any dispute, claim or controversy arising under this **policy**.

If **we** maintain an office in the state in which the address of the **policyholder** (as specified in the **Coverage Summary**) is located, the arbitration shall proceed in any county in which **we** maintain such office in such state. If **we** do not maintain an office in the state in which the address of the **policyholder** (as specified in the **Coverage Summary**) is located, the arbitration shall proceed in the county that includes the capital of the state in which the address of the **policyholder** (as specified in the **Coverage Summary**) is located.

XIV.  **GOVERNING LAW**

This **policy** shall be construed, and the legal relations between **us** and the **insureds** (and anyone claiming under the **insureds**) shall be determined, in accordance with the laws of the state in which the address of the **policyholder**, as specified in the **Coverage Summary**, is located, except that the Federal Arbitration Act (Title 9 of the United States Code) shall apply to the rights and obligations of the parties to submit any dispute, claim or controversy arising under this **policy** to arbitration, as provided in Section XIII above.