UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EMERGENCY PHYSICIANS OF ST. CLARE'S, LLC**, *et al.*, <br><br>   **Plaintiffs,** <br><br> v. <br><br> **PROASSURANCE CORPORATION,** *et al.*, <br><br>   **Defendants.** | Civil Action Number: 2:09-6244 <br><br><br> OPINION <br><br> HON. WILLIAM J. MARTINI |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

Plaintiffs, three group medical practices located in New Jersey, have brought a diversity action alleging fraud and other state law causes of action against Defendant ProAssurance Casualty Company, their provider of medical malpractice insurance, and affiliated entities. Specifically, Plaintiffs assert three causes of action: (1) Count I – the New Jersey Consumer Fraud Act ("NJCFA"); Count II – common law breach of contract; and Count III – accounting and unjust enrichment.

A "claims-made" policy covers the policyholder for alleged incidents of malpractice that occur on or after the applicable coverage date and are first reported during the policy period. At the time the claims-made policy expires, a policyholder may renew coverage for an additional term, or, purchase an ERP endorsement providing "tail coverage" for alleged incidents of malpractice that occurred during a prior coverage period, but are first reported after the claims-made policy period has ended. The gravamen of the Plaintiffs' claim is that when Plaintiffs purchased Extended Reporting Period ("ERP") coverage, they were charged in excess of the "filed rate" (that is, the rate on file with the N.J. Department of Banking and Insurance at the time the ERP became effective). Plaintiffs seek to vindicate their own interests and to bring this action on behalf of two classes: similarly situated New Jersey plaintiffs and on behalf of putative plaintiffs nationally. Defendants have filed a Motion to Compel Arbitration or, in the Alternative to Dismiss the Complaint (the "Motion").

Having considered the Motion, the Court, for the reasons elaborated below, will **GRANT** Defendants' Motion to Compel Arbitration. This Court will order this action to **ARBITRATION**. Finally, this action will be administratively **STAYED** pending arbitration or further Court order. *See DiGeronimo, P.A. v. John Cullinane & Asso.*, 2008 WL 5109743, at *3 (D.N.J. Dec. 2, 2008).

## II.   FACTUAL BACKGROUND ALLEGED IN THE COMPLAINT

Plaintiffs, three New Jersey-based group medical practices, purchased ERP Endorsements to insurance polices, so called "tail coverage," which extends the reporting time for coverage of a claim of alleged medical malpractice that occurred during the policy coverage period. Plaintiffs allege that they were overcharged by ProAssurance Casualty, the entity which sold the ERPs. The primary allegation is that Plaintiffs had a right "to purchase an ERP at rates in effect on the date of termination of their policies ... but that instead of charging those rates ... defendants charged plaintiffs the rate applying to ERP endorsements attaching to policies written after plaintiffs' policies [had] terminated." Opp'n Br. 10. The rate charged was allegedly higher than the rate Defendants had put on file with the State of New Jersey. *Id*. Plaintiffs allege fraud, breach of contract, and unjust enrichment under state law. Jurisdiction is based on diversity. *See* 28 U.S.C. § 1332.[1]

Plaintiffs seek relief on their own behalf on behalf of other similarly situated parties. Plaintiffs seek to represent both a class of New Jersey plaintiffs who purchased ERP endorsements (and whose policies terminated in 2003, 2004, and 2005), and a national class who purchased ERP endorsements (and whose policies, likewise, terminated in 2003, 2004, and 2005).

---

[1] Each of the named Defendant entities appears to be a corporation. Two of the named Plaintiffs appear to be corporations. For diversity purposes, a corporation is a citizen of the state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c). These five entities appear to be diverse. However, Emergency Physicians of St. Clare's is not a corporation. It is a limited liability company or "LLC". The Third Circuit has recently announced that "the citizenship of an LLC is determined by the citizenship of *each* of its members." *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 418 (3d Cir. Jan. 15, 2010) (emphasis added). Plaintiffs have put forward an affidavit establishing the citizenship of the LLC's members. Each member is diverse from each Defendant.

### III.     STANDARD OF REVIEW

Motions to compel arbitration are reviewed under the Rule 56(c) standard for summary judgment. Fed. R. Civ. P. 56(c); *Hunish v. Assisted Living Concepts, Inc.*, 2010 WL 1838427 (D.N.J. May 6, 2010); *Markel Int'l Ins. Co. v. Westchester Fire Ins. Co.*, 442 F. Supp. 2d 200, 202 (D.N.J. 2006). Summary judgment is appropriate if the "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (explaining that a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

If the nonmoving party has the burden of proof at trial, the party moving for summary judgment is not required to "support its motion with affidavits or other similar material negating the opponent's claim," *Celotex*, 477 U.S. at 323, in order to discharge this "initial

responsibility." In this situation, the movant "[merely] show[s] – that is, point[s] out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 324.

In deciding whether a controversy must be submitted to arbitration, a court makes two inquiries. First, did the parties agree to arbitrate their claims? And, second, does the instant dispute fall within the scope of the arbitration agreement. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985); *Hilinski v. Gordon Terminal Serv. Co. of N.J., Inc.*, 265 Fed. Appx. 66, 68-69 (3d Cir. 2008). Furthermore, federal policy favors the arbitration of disputes. *See Moses H. Cohen Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

## IV.   ANALYSIS

In determining whether the parties agreed to arbitrate their claim, the Court turns to state contract law. As their briefs' demonstrate, both parties have assumed that New Jersey law applies. This appears to be the effect of the "Governing Law" provision within the polices. *See* Dinger Decl., Ex. A. ¶ 14 (July 22, 2010). Likewise the policies have an arbitration provision which provides:

> XIII. ARBITRATION. Any dispute, claim or controversy arising out of, relating to or in connection with this policy, its subject matter or its negotiation, as to the existence, validity, interpretation, performance, non-performance, enforcement, operation, breach of contract, breach of warranty, continuance or termination, thereof or any claim alleging fraud, deceit, or suppression of any material fact or breach of fiduciary duty shall be submitted to binding arbitration in accordance with Title 9 U.S.C. § 1 et seq.... The provisions hereof shall be a complete defense to any suit, action, or proceeding in any federal, state or local court or before any administrative tribunal with respect to any dispute, claim or controversy arising under this policy.

*Id.* ¶ 13. Plaintiffs do no dispute that this provision was part of the text of the policy agreement, but dispute its validity or enforceability under state law. Plaintiffs argue that the arbitration provision is not enforceable because the contract is an unconscionable contract of adhesion. Plaintiffs also argue that under state law a general arbitration provision, absent more specific references to the relevant statutory causes of action and to the jury trial right to be waived, are not enforceable. Finally, Plaintiffs argue that the arbitration provision cannot be enforced because the costs of arbitration effectively bar their ability to vindicate their rights.

A.  Unconscionable Contract of Adhesion

Plaintiffs argue that the arbitration provision should be set aside because New Jersey courts have held that insurance contracts are contracts of adhesion. In *President v. Jenkins*, 853 A.2d 247 (N.J. 2004), the Supreme Court of New Jersey held:

> When interpreting an insurance policy, courts should give the policy's words their plain, ordinary meaning. If the policy terms are clear, courts should interpret the policy as written and avoid writing a better insurance policy than the one purchased. Nevertheless, we recognize that an insurance policy is a contract of adhesion between parties who are not equally situated. Such policies are often prepared unilaterally by the insurer, and have always been subjected to careful judicial scrutiny to avoid injury to the public. Moreover, policies are frequently not read by the insured, whose understanding is often impeded by the complex terminology used in the standardized forms.
>
> When an insurance policy's language fairly supports two meanings, one that favors the insurer, and the other that favors the insured, the policy should be construed to sustain coverage. In other words, when an ambiguity exists within an insurance contract, courts should interpret the contract to comport with the reasonable expectations of the insured.

*Id*. at 254 (citations omitted). The *Jenkins* court did not hold that because an insurance contract is a contract of adhesion it will not be enforced; but rather, if a plaintiff can point to an ambiguity in contract language, the courts will play a vigilant role, scrutinize the contract, in order to sustain an insured's reasonable expectations, and to sustain coverage. In this case, Plaintiffs do not point to any contract ambiguity; thus, the line of New Jersey cases holding that insurance contracts are contracts of adhesion does not squarely apply. Likewise, even if Plaintiffs did point to a contract ambiguity, this particular doctrine is generally used in the context of a disputes going to the extent of coverage, not to ancillary provisions such as those relating to arbitration. Additionally, it must be added that the dispute in *Jenkins* related to a contract between a single doctor and his insurer. Here, by contrast, the contract is between an insurer and a group practice making use of the corporate form (or the LLC form). *Cf. Assicurazioni Generali, S.P.A. v. Clover*, 195 F.3d 161, 165(3d Cir. 1999) ("When, as in this case, *a business entity* such as Intronet obtains a group insurance contract that applies to individuals in various states, both the insurer and the organization have an arguable interest in establishing uniform procedures by specifying a particular state's law to apply to future disputes." (emphasis added)). To characterize these plaintiffs as unsophisticated parties (as in *Jenkins*) seems forced at best. Finally, New Jersey's courts have regularly held that non-negotiated mandatory arbitration provisions in insurance contracts –

5

even if contracts of adhesion – are enforceable. *See Defilippis v. Prudential Property & Cas. Ins. Co.*, 2007 WL 1485182, at *1-2 (N.J. Super. App. Div. May 23, 2007) (enforcing, post-*Jenkins*, insurance contract's arbitration provision).

Plaintiffs argue that the policy's arbitration provision was unconscionable under state law. "In determining whether to enforce the terms of a contract of adhesion, courts have looked not only to the take-it-or-leave-it nature or the standardized form of the document but also to the subject matter of the contract, the parties' relative bargaining positions, the degree of economic compulsion motivating the 'adhering' party, and the public interests affected by the contract." *Rudbart v. North Jersey Dist. Water Supply Comm'n*, 605 A.2d 681, 687 (N.J. 1992). As to significant public interests at stake, the Plaintiffs point to the public policy interests motivating passage of the NJCFA.. But as the New Jersey Supreme Court has explained: "The [Appellate Division] in [*Gras v. Assocs. First Capital Co.*, 786 A.2d 886 (2001)] found that there was no 'inherent conflict ... between arbitration and the underlying purpose of [the NJCFA],' and we agree." *Muhammad v. County Bank of Rehoboth Beach, Del.*, 912 A.2d 88, 101 (N.J. 2006). Thus this factor does not lean towards finding unconscionability. Plaintiffs also assert that the bargaining power between the parties was unequal, and that they had "*few* alternatives other than to purchase tail coverage at the prices charged by Defendants." Opp'n Br. 15 (emphasis added). *But cf. id*. (asserting that Defendants had "a monopoly in selling tail coverage for *its* policies" (emphasis added)). Even if taken as true, this is not a sufficient reason to set aside the express terms of the contract. To suggest that Plaintiffs had a "few alternatives" is to state that they had, in fact, other alternatives. *Cf. Ind. Grocery Co., Inc. v. Super Valu Stores, Inc*., 684 F. Supp. 561, 579 (S.D. Ind. 1988) (finding no "dangerous probability" of market leader imposing monopolistic pricing where the market had "at least three strong players"). Moreover, unequal bargaining power between parties and an asserted differential in sophistication may lead to a finding of unconscionability if that power has been used to select a dispute-resolution mechanism that favors the insurer-drafter. But there is no such showing here. *See Johnson v. West Suburban Bank,* 225 F.3d 366, 378 n.5 (3d Cir. 2000) (noting that an arbitration provision of a contract of adhesion will be set aside based on a showing that it was fraudulently induced or unconscionable, e.g., it favors one party over another, or it is oppressive). Finally, Plaintiffs argue that they were economically compelled to accept the terms of the agreement and therefore the arbitration provision is unconscionable, and further assert that Plaintiff had a monopoly in regard to "tail coverage for its policies." Opp'n Br. 15. This last factual claim is not alleged in the complaint and Plaintiffs make no proffer as to what evidence they might introduce to support it. Even assuming that Plaintiffs could make a sufficient showing in regard to this factor, in balancing all the factors, the Court concludes that the policy agreement was not unconscionable.

B.    Waiver

Plaintiffs argue that the arbitration provision is unenforceable because it does not contain a valid waiver.

In *Alamo Rent A Car, Inc. v. Galarza*, 703 A.2d 961 (N.J. Super. Ct. App. Div. 1997), the court held that

> The 'any dispute' language [in an arbitration provision] is the very least an employer needs to utilize in order to guarantee arbitration of all disputes [between an employer and employee]. The better course would be the use of language reflecting that the employee, in fact, knows that other options such as federal and state administrative remedies and judicial remedies exist; that the employee also knows that by signing the contract, those remedies are forever precluded; and that, regardless of the nature of the employee's complaint, he or she knows that it can only be resolved by arbitration.

*Id*. at 966. The contested arbitration provision at issue here meets this standard. The arbitration provision reaches

> *Any dispute, claim or controversy* arising out of, relating to or in connection with this policy ... [including] breach of contract ... or any claim alleging fraud ... shall be submitted to binding arbitration .... The provisions hereof shall be a complete defense to any suit, action, or proceeding in any federal, state or local court or before any administrative tribunal with respect to *any dispute, claim or controversy* arising under this policy.

Dinger Decl., Ex. A. ¶ 13 (emphasis added). Thus, it (1) uses the "any dispute" language preferred by the New Jersey courts (and actually uses that language twice); (2) puts the insured on express notice that it waiving judicial remedies in regard to contract and fraud claims, the precise sort of claims at issue here;[2] and (3) puts the insured on notice that it is waiving federal, state, and administrative judicial forums in favor of arbitration.

---

[2] In addition to a common law breach of contract claim and the NJCFA claim, Plaintiffs make an unjust enrichment claim. However, "[u]njust enrichment is not an independent theory of liability, but is the basis for a claim of quasi-contractual liability." *Nat'l Amusements, Inc. v. N.J. Turnpike. Auth.*, 619 A.2d 262 (N.J. Super. Ct. Law Div. 1992), *aff'd*, 645 A.2d 1194 (App. Div.), *certif. denied*, 649 A.2d 1288 (1994).

Plaintiffs argue that the arbitration provision at issue here is not enforceable because it fails to clearly waive statutory rights generally, fails to specifically waive *state* statutory rights, and fails to waive rights under the NJCFA. The New Jersey courts do not require express waiver or the use of a particular set of words in regard to effectuating valid waiver. Rather, an arbitration provision will be held if it is "clear and unambiguous, [and] sufficiently broad to encompass reasonably plaintiff's statutory causes of action." *Martindale v. Sandvik, Inc.*, 800 A.2d 872, 883 (2002). An arbitration provision will be upheld if it fairly encompasses "*either* expressly or by *general reference*, statutory claims redressable by the [plaintiff's cause of action]." *Garfinkel v. Morristown Obstetrics & Gynecology Associates, P.A.*, 773 A.2d 665, 672 (N.J. 2001) (emphasis added); *see also Kuhn v. Terminix Intern. Co., L.P.*, 2008 WL 1987432, at *2 (N.J. Super. Ct. App. Div. May 9, 2008) (holding that "to be enforceable, such arbitration provisions must provide that by signing, the consumer agrees to arbitrate 'all statutory claims arising out of the relationship,' 'any claim or dispute based on a federal or state statute,' or *contain similar language reflecting a general understanding of the type of claims included in the waiver*" (emphasis added)). Although the arbitration provision at issue here does not expressly mention either the NJCFA or state statutory causes of action as a class, it does generally reference fraud claims as a class, which would seem to include state statutory fraud claims. Likewise, the provision expressly cuts off access to state courts in favor of arbitration. If express language providing for arbitration in connection with federal and state statutory causes of action will be upheld, then it seems to follow that where a party has signed a provision waiving access to federal, state, local, and administrative forums in favor of arbitration that such a provision should also be withheld. If anything the latter type of provision, like the provision at issue here, is broader and, arguably, less technical, then the former type of provision.

Finally, Plaintiffs argue that the arbitration provision is unenforceable absent an express waiver of the right to a jury trial. *See Kuhn*, 2008 WL 1987432, at *2 (refusing to enforce arbitration provision where the provision "does not inform the consumers they have waived their statutory rights or their right to a jury trial"). *Kuhn* is neither controlling, nor on-point. In *Kuhn*, the court held that the contract neither specified the class of claim subject to arbitration, nor did it provide a waiver of the jury right. By contrast, this Court has already held that the arbitration provision in the policy agreement does sufficiently specify the class of causes of action subject to waiver; however, the policy agreement does not expressly waive the jury right. Thus, the waiver provision in this contract is better drafted than the one at issue in *Kuhn* (in which the arbitration provision was not enforced), but it is not as well drafted as the one at issue in *Martindale* (enforcing the arbitration provision where the jury right was expressly waived). Neither party has pointed to a New Jersey case on these precise facts, much less a case decided by the New Jersey Supreme Court, which is controlling for these purposes. Although the matter is capable of doubt, this Court predicts that if faced with these facts, the New Jersey Supreme Court would uphold the arbitration provision. First, such

a holding comports with the public policy favoring arbitration. Second, the provision barring access to federal, state, and municipal courts in favor of arbitration puts a party on notice that it will lose access to the jury right. Even a person of common knowledge, but without higher formal education, might very well understand that if one waives access to a court, one has waived access to a jury. In so holding, the Court is taking into account the reasonable expectations of the insureds here. And, third, the waiver provision here was one Plaintiffs had seen before in prior policies (issued by these Defendants), it made use of straight forward nontechnical language, and it appeared in the same size font as the surrounding provisions. *Aamco Transmissions, Inc. v. Harris*, 1990 WL 83336, at *2 (E.D. Pa. June 18, 1990) (finding a waiver provision printed in the same size as the rest of agreement to be conspicuous).

    C.    Arbitration Fees

Plaintiffs argue that the arbitration provision is unconscionable because the costs associated with arbitration may prevent Plaintiffs from vindicating their rights. *See Parilla v. IAP Worldwide Servs. VI, Inc.*, 368 F.3d 269, 283-85 (3d Cir. 2004). Here, Plaintiffs assert that their fees "could easily exceed $60,000," Opp'n Br. 24, but they put forward no evidence and they make no proffer (even in the complaint) tending to establish their "inability to pay those costs." *Parilla*, 368 F.3d at 284.

## V.    CONCLUSION

For the reasons elaborated above, the Court **GRANTS** Defendants' Motion to Compel Arbitration. This action is ordered to **ARBITRATION**. Finally, this action is administratively **STAYED** pending arbitration or further Court order.

An appropriate order accompanies this memorandum opinion.

                                              s/ William J. Martini  
**DATE: August 19, 2010**                        **William J. Martini, U.S.D.J.**